THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v RICHARD HILL, Respondent.—Order, Supreme Court, New York County, entered April 12, 1977, suppressing the defendant's physical evidence and his statements to the police, unanimously reversed, on the law and the facts, and motion to suppress denied. On October 5, 1976, Detective Frank Grimes and two other officers were patrolling in an unmarked car in the area of 115th Street and St. Nicholas Avenue. At about 11:30 P.M., they received a radio call informing them that "Men with guns at 1800 Seventh Avenue on the eighth or ninth floors". At the suppression hearing, Grimes gave the following account of what transpired upon entering the building. Initially, his partners stopped some individuals who were attempting to exit the building. As Grimes was ascending the second flight of stairs, he encountered a woman who turned to someone behind her and said "Police are here, police are coming." Grimes then heard a noise in the second floor hallway that sounded like someone had hit a garbage pail. Upon proceeding to the second floor, Grimes

saw the defendant about to enter an apartment. The detective identified himself and told the defendant he wished to ask him a few questions. To the detective's initial inquiry, the defendant answered in the affirmative that he lived in the building. When the detective asked him for proof of that fact, the defendant began to mumble and look around. During this entire colloquy, defendant also kept the right portion of his body away from the detective. Grimes then positioned himself in front of the defendant. At that time, he observed a revolver protruding from defendant's right front jacket pocket. When the defendant stated that he did not have a permit for the gun, he was arrested. On the way to the precinct in the police car, the defendant averred that he did not carry the gun for "offensive" reasons and merely to protect other people from "stickup men" in the subject building. After the defendant was read his *Miranda* warnings in the precinct, he repeated to the officers his alleged reason for carrying a gun. The defendant gave a different version of the facts. He maintained that, as he was putting his key in the door, Grimes came up to him and patted his jacket pocket without any explanation or inquiry. The detective then removed the gun from his jacket pocket. The defendant denied that the gun was visible prior to its removal by the detective. The court at the suppression hearing found that the detective had no probable cause to question defendant on the second floor since the radio call had referred to the eighth and ninth floors. Relying upon *People v De Bour* (40 NY2d 210), the court further found that the detective had no reasonable suspicion to believe that criminal activity was afoot. Therefore, he granted the motion to suppress both the physical evidence and the defendant's statements in the police car. The court at the suppression hearing did not express any disbelief in the detective's testimony with regard to the original stop of defendant. Because the court found that the original stop, as described by the detective, was illegal, it never reached the issue of whether the gun was visible to the detective. In resolving this appeal, we fully credit the testimony of the detective including the portion thereof as related to the visibility of the gun in defendant's pocket (CPL 470.15, subd 1). The minimum requirement for a lawful detentive stop is a founded suspicion that criminal activity is afoot *(People v Cantor,* 36 NY2d 106, 114). To justify the stop, the police must indicate specific and articulable facts which, along with any logical deduction, reasonably prompt such intrusion. *(People v Cantor, supra,* p 113.) The action taken by the police must also be reasonably related in scope to the circumstances which rendered its initiation permissible. *(People v De Bour,* 40 NY2d 210, 215.) There are "articulable facts" present in this record that justify the detective's action in stopping and questioning defendant. First of all, the detective could properly draw on his prior experience and knowledge that recent arrests for gun possession had been made in this building. Secondly, the detective could logically infer that the woman's statement to an individual on the second floor was actually a warning to this defendant to secret himself from the police. Thirdly, the detective could fairly conclude that the subjects of the radio call had changed their location in the building during the interval it took to respond. Furthermore, the conduct of the detective was "reasonably related in scope to the circumstances" presented, particularly in view of the fact that he never unholstered his gun during this entire occurrence. When the defendant continued to mumble, look about, and otherwise act abnormally and evasively, the detective was justified in scrutinizing the defendant's person and clothing more closely. Upon seeing the gun protruding from defendant's pocket, the detective was warranted in arresting defendant. Likewise, we find that defendant's subse-

quent statements in the police car were totally voluntary. Thus, the motion to suppress was erroneously granted. Concur—Murphy, P. J., Lupiano, Markewich, Sandler and Sullivan, JJ.

■ In the Matter of the Arbitration between ASIATIC PETROLEUM CORPORATION, Respondent, and NEW ENGLAND PETROLEUM CORPORATION et al., Appellants. In the Matter of the Arbitration between NEW ENGLAND PETROLEUM CORPORATION et al., Respondents-Appellants, and ASIATIC PETROLEUM CORPORATION, Appellant-Respondent.—Order and judgment (one paper) of the Supreme Court, New York County, entered June 22, 1977, confirming the arbitration award of March 3, 1977 in favor of Asiatic and denying cross motion of New England and Grand Bahama to vacate the award, unanimously affirmed, with $75 costs and disbursements, of this appeal to petitioner-respondent for the reasons stated by Korn, J., at Special Term. Judgment (denominated an order) of the Supreme Court, New York County, entered February 1, 1978, denying motion of Asiatic to confirm the arbitration award of March 16, 1977 and granting cross motion of New England and Grand Bahama to vacate the award to the extent of remanding the matter for further proceedings before the same arbitrators, unanimously reversed, on the law, with $75 costs and disbursements to respondent Asiatic, the motion to confirm the award granted and the cross motion to vacate the award denied. We find that the arbitrators were not guilty of misconduct (as asserted by New England and Grand Bahama) in refusing to enforce the subpoenas duces tecum issued by counsel for New England and Grand Bahama in an effort to demonstrate that they were "overcharged" on oil which Asiatic sold to them between 1973 and 1975. Such overcharges were allegedly, at least in part, the result of improper price adjustments made by Asiatic when it computed higher Venezuelan taxes and royalties (known as HGT—Host Government Take). We note that the contracts herein which are at the base of this controversy provided that "If requested by Buyers, Sellers will furnish to Buyers evidence of the applicability of the price increase on the Oil to be sold hereunder to such increased economic burden and for this purpose a certificate by independent public accountants for Sellers shall constitute sufficient evidence thereof." Proof that such certificates were furnished to New England and Grand Bahama was adduced before the arbitrators. We do not find the arbitrators' decision not to enforce the subpoenas constituted a refusal to hear pertinent evidence which a party offers for consideration by arbitrators. It amounted to no more than a refusal to compel Asiatic to produce certain documents and records. Apparently the arbitrators believed that the particular records were not relevant within the context of the matter before them. As was said in the companion case decided herewith (opn by Korn, J., dated June 16, 1977), "It is the law that an award may not be vacated for refusal to enforce the subpoenas." It is apparent to us that "the arbitrators bottomed their ruling on the interpretation of the contracts. Their interpretation, even if it is erroneous, as a matter of law, may not be questioned." (See *Matter of Wilkins,* 169 NY 494.) Our decision in *Asiatic Petroleum Corp. v Carey* (55 AD2d 556) does not compel a contrary holding. There Asiatic sued Carey, in an action at law, not arbitration, upon a guarantee in favor of Asiatic and in that context we required Asiatic to produce the documents reflecting the "Host Government Take". Here we are not concerned with the procedures available in an action at law, but with an arbitration proceeding and the rules applicable to such proceedings. Moreover, we note that New England and Grand Bahama never sought in their arbitration proceeding to avail themselves of the option open under CPLR 3102 (subd [c]) to seek judicial

assistance to enforce the subpoenas duces tecum in issue but left that issue to the arbitrators. In fact, this court's holding in *Asiatic v Carey (supra)*, was presented to the arbitrators and rejected by them on grounds of relevance. In these circumstances we do not find evidence that the arbitrators were guilty of misconduct. *(Matter of Raisler Corp. [New York City Housing Auth.]*, 32 NY2d 274; *Matter of Professional Staff Congress/City Univ. of N. Y. v Board of Higher Educ. of City of N. Y.*, 39 NY2d 319.) Rather, we find that the matters in issue were fully explored by the arbitrators. Concur—Kupferman, J. P., Birns, Silverman, Fein and Sandler, JJ.

█ JULIUS TRUMP, Respondent, v LAWRENCE SAIDENBERG et al., Appellants.—Order, Supreme Court, New York County, entered March 22, 1978 and judgment entered thereon on March 31, 1978 which granted plaintiff's motion for summary judgment on his cause of action for the return of a $20,000 deposit, reversed, on the law, without costs and without disbursements, the judgment vacated, and the motion for summary judgment denied, without prejudice to renewal after an adequate opportunity for disclosure. Plaintiff sues to recover a $20,000 deposit made pursuant to a written contract of sale by defendant Lawrence Saidenberg to respondent of a certain co-operative apartment at 941 Park Avenue. It was agreed that if the sale was not approved by the co-operative, the $20,000 deposit would be returned to plaintiff. If, however, the plaintiff defaulted in his performance under the contract, the deposit was to be delivered to the defendant Saidenberg as liquidated damages. The sale was not approved. Appellant refused to permit the escrow agent to return the deposit on the ground that plaintiff, acting in bad faith, undertook to hinder, if not prevent, the co-operative's consent to the sale. In support of this claim defendants have alleged the following: First, the defendant was informed prior to and at the signing of the contract of sale that the co-operative would not approve the sale if he required financing of the purchase, confirmed that information, and stated that it made no difference because he would be able to obtain the cash from "any of the banks that we do business with." Nonetheless, it is alleged that plaintiff requested of the co-operative that he be permitted to finance purchase of the apartment. Second, it is alleged that the plaintiff submitted to the board of directors a financial statement, purporting to show assets of $1 million, that was presented in a form calculated to raise doubts about the reliability of the assertion, and further that the statement failed to disclose substantial additional assets. We are satisfied that a course of action by plaintiff designed to prevent the co-operative's consent to the sale, would, if proved, "constitute a willful nonperformance of a condition subsequent and thus destroy plaintiffs' right to recover the deposit." *(Falk v Goodman*, 7 NY2d 87, 91.) It is legally irrelevant to the issue presented that the contract of sale contained no specific representation that plaintiff would not seek financing and that it included a merger clause of a familiar kind. (Cf. *Falk v Goodman, supra.)* The more difficult question is whether the specific factual allegations presented on behalf of the defendants are sufficient to raise an issue of fact as to the defense alleged. We have concluded that enough is presented to require denial of summary judgment at this time without prejudice to renewal after plaintiff has had an opportunity to pursue discovery. (See CPLR 3212, subd [f].) Concur—Kupferman, J. P., Silverman, Fein and Sandler, JJ.; Birns, J., dissents and would affirm for the reasons stated by Helman, J., at Special Term.

█ CIRCLE INDUSTRIES CORP., Appellant, v WERNER KREBS, INC., et al.,

Respondents.—Order, Supreme Court, Bronx County, entered April 5, 1978, denying plaintiff's motion for summary judgment in lieu of complaint (CPLR 3213), unanimously modified, on the law, and in the exercise of discretion, to the extent of directing the serving of formal pleadings, plaintiff to serve and file its complaint within 20 days from the date of entry of the order herein and the defendants to interpose an answer within 10 days thereafter with a reply, if any, to be served within five days after service of the answer, all without prejudice to a further motion for summary judgment by plaintiff immediately upon joinder of issue, and, as so modified, affirmed, without costs and disbursements. The answering papers by defendants raise a vaguely articulated counterclaim relevant to the relationship between the parties and a purported abuse by plaintiff of a power of financial oversight allegedly given by defendants to plaintiff with respect to defendants' affairs. On this record the issues relating to this counterclaim and its possible bearing on plaintiff's request for summary judgment have not been sufficiently sharpened to permit of reasoned resolution. Under these circumstances, prudence mandates that formal pleadings be served to remedy this defect and that plaintiff's request for relief be made and viewed in such context. In this connection, it is noted that plaintiff cannot be prejudiced, if eventually successful, by this brief halt in the accelerated process provided by CPLR 3213: it was conceded on argument that defendant would be able to pay the judgment sought by plaintiff. Concur—Lupiano, J. P., Evans, Markewich and Sullivan, JJ.

■ GRESHAM-GRENFELL CORP., Appellant, v LAWRENCE R. CAMPBELL, Respondent.—Order, Appellate Term, entered March 6, 1978, affirming order of Civil Court, New York County, entered October 11, 1977, affirmed, without costs and without disbursements. The formal complaint directed by the Civil Court order denying summary judgment (CPLR 3213) shall be served within 20 days from the date of the order entered hereon, with issue to be joined by service of the answer within 10 days thereafter, reply if any to be served within five days thereafter. The foregoing is without prejudice to a new motion for summary judgment following joinder of issue. (See *Circle Inds. Corp. v Krebs,* 65 AD2d 709.) Concur—Kupferman, J. P., Birns, Markewich and Sandler, JJ.; Silverman, J., dissents in a memorandum as follows: I would reverse the order appealed from and grant plaintiff's motion for summary judgment. I think that the ordinary rules governing summary judgment apply to a motion for summary judgment under CPLR 3213. Defendant's papers fail to meet the requirement of *Di Sabato v Soffes* (9 AD2d 297, 301.) "It is incumbent upon a defendant who opposes a motion for summary judgment to assemble, lay bare and reveal his proofs, in order to show that the matters set up in his answer are real and are capable of being established upon a trial."

■ CONFECCOES WOLENS, S. A., Appellant, v SHUTZER INDUSTRIES, INC., Respondent, et al., Defendant.—Order, Supreme Court, New York County, entered November 1, 1977, granting defendant Shutzer's motion to dismiss the complaint on the ground of *forum non conveniens,* and vacating default judgment and bond filed as security therefor, is unanimously reversed, on the law and the facts, and in the exercise of discretion, with $75 costs and disbursements of this appeal payable to appellant by respondent, and the motion is denied. This is an action for goods sold and delivered by a Brazilian corporation against defendant Shutzer Industries, Inc. (hereinafter defendant), a Delaware corporation with its principal office and place of business in Massachusetts, each party having some minimal contacts with

New York. (Although First National Bank of Boston was named as a defendant, it has never been served and the action has been discontinued as against it.) In the order appealed from, Special Term granted defendant's motion to dismiss on the ground of *forum non conveniens* provided defendant waive any applicable Statute of Limitations defense available in a proper forum. If that motion and determination had been made at the beginning of the case, it might well have been a proper determination. But certain intervening events persuade us that the interest of justice requires that the case be retained in New York. The action was begun in November, 1976 in the Supreme Court, New York County by service of the summons and complaint on an employee of the defendant in New York and on the defendant's corporate headquarters in Massachusetts. Due to oversight in the office of defendant's then New York attorney, defendant defaulted in appearing or answering and on December 31, 1976 a judgment for $43,934 was entered against it. It was in connection with that judgment that plaintiff discontinued its action against First National Bank of Boston. Proceeding to enforce its judgment, plaintiff served a restraining notice on a New York debtor of defendant, who apparently owed some $85,000 to defendant, and on Chase Bank. Defendant moved by order to show cause dated January 27, 1977 to vacate the default judgment and to permit defendant to file a proposed answer, including a counterclaim. On the return date of the motion, January 31, 1977, the attorneys for plaintiff and defendant entered into a stipulation that the defendant would pay forthwith to plaintiff $15,437, representing insurance moneys collected by defendant as a result of the loss of the goods in transit; plaintiff agreed to limit the restraining order to $30,000 of funds held by the Chase Bank; and the motion was adjourned. On February 28, 1977, defendant's motion to open the default was denied without prejudice to renewal. Defendant then by motion returnable March 11, 1977 moved to stay execution on the judgment until defendant had filed a new motion to open the default judgment. This motion was granted in a memorandum of March 16, 1977 on condition that defendant file an undertaking in the amount of $35,000 as security for the judgment. That bond was filed and as of the time of the order appealed from was still in effect. Defendant again moved to open the default and that motion was granted solely to the extent of vacating the default and the judgment was permitted to remain in effect as security. Thereafter, a long-form order was entered on June 24, 1977 to the same effect stating, however, that not only the judgment but the bond posted by defendant were permitted to remain as security. Defendant filed and served its answer, including a counterclaim, and plaintiff replied. By notice of motion returnable September 7, 1977, defendant then moved to dismiss the action under CPLR 327 on the ground of *forum non conveniens.* That motion was granted and it is from that decision that the present appeal has been taken. CPLR 327 is the codification of the flexible *forum non conveniens* rule enunciated by the Court of Appeals in *Silver v Great Amer. Ins. Co.* (29 NY2d 356). The section gives the court power to stay or dismiss the action "in the interest of substantial justice". We think that the intervening equities are such that it would not be in the interest of substantial justice to dismiss the action after all the activity that has taken place in this State, incidentally depriving the plaintiff of the benefit of the bond which has been furnished to secure any judgment as a condition of vacating defendant's default. (See, also, *Mirabella v Banco Ind. De La Republica Argentina,* 43 AD2d 489.) Concur—Kupferman, J. P., Birns, Silverman, Markewich and Sandler, JJ.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FREDERICK

WILSON, Appellant.—Judgment, Supreme Court, New York County, rendered on May 9, 1977, unanimously affirmed. Application by appellant's counsel to withdraw is granted. (See *Anders v California,* 386 US 738; *People v Saunders,* 52 AD2d 833). We have reviewed this record and agree with appellant's assigned counsel that there are no meritorious points which could be raised on this appeal. Although appellant has been afforded an ample opportunity to apply for assignment of new counsel, he has failed to do so. Concur—Kupferman, J. P., Evans, Fein, Lynch and Sandler, JJ.

■ EDWARD BOKER, INC., Appellant, v A. BOHRER, INC., et al., Respondents.—Order, Supreme Court, Bronx County, entered on August 2, 1977, unanimously affirmed on the opinion of Di Fede, J. at Special Term, without costs and without disbursements. Concur—Birns, J. P., Evans, Lane and Sullivan, JJ.

■ BETH FRIEDMAN et al., Respondents, v KATHARINE S. J. LAW, Appellant, et al., Defendant. KATHARINE S. J. LAW, Appellant, v LOUIS L. FRIEDMAN et al., Respondents. KATHARINE S. J. LAW, Defendant and Third-Party Plaintiff-Appellant, v SAN REMO TENANTS' CORP., Third-Party Defendant-Respondent.—Order, Supreme Court, New York County, entered on May 12, 1978, unanimously affirmed for the reasons stated by Korn, J., without costs and without disbursements. Concur—Birns, J. P., Evans, Lane and Sullivan, JJ.

■ In the Matter of ROBERT D'ONOFRIO et al., Respondents, v THOMAS ROCHE, as Personnel Director of the City of New York, et al., Appellants.—Appeal from order of the Supreme Court, New York County, entered on June 27, 1977, dismissed as academic, without costs and without disbursements. Order, Supreme Court, New York County, entered on July 26, 1977, unanimously affirmed, without costs and without disbursements. No opinion. Concur—Birns, J. P., Evans, Lane and Sullivan, JJ.

## (November 16, 1978)

■ PORTMAN CURSON, INC., et al., Respondents, v HARTFORD FIRE INSURANCE COMPANY, Defendant and Third-Party Plaintiff-Appellant, and SAM PALMISANO, Doing Business as ATLANTIC CITY PHILADELPHIA EXPRESS, Third-Party Defendant-Respondent. INSURANCE COMPANY OF NORTH AMERICA et al., Third-Party Defendants.—Order, Supreme Court, New York County, entered November 3, 1977, which, *inter alia,* granted third-party defendant Palmisano's motion for summary judgment dismissing the third-party complaint as against him, unanimously modified, on the law, so as to deny that motion, and otherwise affirmed; and judgment entered thereon on November 9, 1977, unanimously reversed, on the law, and vacated, without costs or disbursements. Plaintiffs exhibited two knitting machines in Atlantic City between April 29 and May 4, 1973. On or about May 9, 1973, third-party defendant Palmisano transported one of these machines to Kennedy Airport. During transit to the airport, plaintiffs maintain that the machine was damaged. They now sue their insurer, defendant Hartford, for damages. The latter, in turn, seeks judgment over against Palmisano. Subdivision (b) of section 2 of the subject bill of lading provides in pertinent part: "As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine

months after delivery of the property * * * Where claims are not filed * * * in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid." Palmisano contends that the third-party complaint must be dismissed as against him since plaintiffs never served a written claim upon him within the requisite nine-month period. Generally, any written document, however informal, which indicates an intention to claim damages and identifies the shipment, will be sufficient to comply with the mandate of subdivision (b) of section 2. The document need not be in a particular form. The requirement of a written claim is addressed to a practical exigency and is to be construed in a practical way *(American Synthetic Rubber Corp. v Louisville & Nashville R. R. Co.,* 422 F2d 462, 468). On May 30, 1973, shortly after the alleged occurence, plaintiffs' attorney forwarded the following letter to Palmisano: "We are the attorneys for Albi Knitting Machine, Inc. ('Albi'). I am informed that on or about May 9, 1973 a knitting machine was loaded on to one of your trucks at Atlantic City Convention Hall to be delivered to Seaboard Air Freight Terminal JFK International Airport, New York City. This machine arrived at Seaboard in a very badly damaged condition. If you would like to examine the damage to the machine or have an agent from your insurance company examine the machine before Albi returns it to Germany, please notify me by return mail. Otherwise I will assume that you are not interested in examining the machine which is being held at the Seaboard Air Freight Terminal, JFK International Airport, and I will advise our client to return the machine to Germany." While this letter does not specifically mention that a claim is being made, a fair and practical reading thereof, in this commercial setting, clearly reveals that, in fact, plaintiffs are making claim for the purportedly damaged machine. Palmisano's motion for summary judgment should have been denied since the above-quoted letter of May 30, 1973 satisfied the demands of subdivision (b) of section 2. At Special Term, Hartford had also cross-moved for summary judgment dismissing the complaint for plaintiffs' alleged failure to safeguard its rights of subrogation by not filing a written claim with Palmisano. Since we have found that the plaintiffs did file a proper claim, Hartford's cross motion is denied as academic. Even if the plaintiffs had failed to file a written claim, Hartford could not avoid its liability under the policy on the ground that plaintiffs had impaired its rights of subrogation. Hartford has no contractual right under the policy to demand that plaintiffs file a written claim. *(Insurance Co. of North Amer. v Newtowne Mfg. Co.,* 187 F2d 675, 684.) Concur—Murphy, P. J., Fein, Lane and Sullivan, JJ.

■   In the Matter of GLORIA VEGA, as Mother and Natural Guardian of DULCETTE VEGA, an Infant, Respondent, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Appellant.—Order, Supreme Court, Bronx County, entered April 5, 1977, granting plaintiff's motion to compel acceptance of a late notice of claim, unanimously reversed, on the law, and the application denied, without costs or disbursements. The infant plaintiff was born in November, 1963 and is suffering from permanent brain damage allegedly resulting from defendant's negligence at the time of her birth. Plaintiff first attempted to file a late notice of claim in November, 1976 by making an application at Special Term to compel the defendant to accept late notice. Plaintiff offered as excuse for delay in filing the infancy and disability of the infant plaintiff. Special Term granted the motion, relying on the recent amendment to section 50-e of the General Municipal Law, under which filing of a late notice of claim is permitted within the time limited for the commencement of an action by the claimant. In this case, it is claimed that

infancy would have tolled the time within which the action should have been commenced. We would reverse and deny the application. The cause of action in this case accrued in 1963. The Court of Appeals has recently interpreted the amendment to section 50-e of the General Municipal Law and held that claims accruing more than one year prior to the effective date of the amendment would not be revived. The basis for this holding was that the prior statute had a one-year limitation within which to file a late notice of claim, and allowing greater retroactivity would permit claims of infants having a genesis in events over 18 years ago to file claims. To open the door retroactively to these old claims would be to expose municipalities to claims against which defenses would be unpreparable (*Matter of Beary v City of Rye,* 44 NY2d 398, 413-414). The claim in the case at bar having accrued in 1963 is therefore not susceptible of judicial resurrection even under the amendment to section 50-e, and the motion to file a late notice of claim must be denied. Concur—Murphy, P. J., Fein, Lane and Sullivan, JJ.

■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ARCHIE WILLIAM HOWARD, Also Known as WILLIAM ARCHIE HOWARD, Respondent.— Order, Supreme Court, Bronx County, entered June 5, 1978, granting the defendant-respondent's motion to suppress physical evidence pursuant to CPL 710.20, unanimously reversed, on the law and the facts, and the motion to suppress denied, and the matter remanded for further proceedings. Findings of fact inconsistent herewith are reversed. Two police officers in plainclothes and in an unmarked car in a high crime area observed the defendant carrying a small piece of luggage variously described as a woman's vanity case or a square lunch box. Because he looked suspicious, one of the officers came abreast of him, displayed his police shield and said "police officer, I would like to speak to you". The defendant ignored the police, and when they repeated the statement, the defendant began to run and climbed an iron fence, with one of the police officers in pursuit. A civilian also joined the chase and followed the defendant into a basement where he saw him throw the bag into a corner among some old furniture. The defendant then ran to the opposite wall and tried to escape through a small window. The civilian held him until the police arrived. The officer could not find the bag, but the civilian pointed to it, and when the officer opened it, he discovered a large amount of heroin in glassine envelopes and a revolver. The officers' actions were proper throughout the entire incident, and the motion to suppress should have been denied. Under the circumstances heretofore disclosed, the police were entitled to pursue the defendant. (*People v Rosemond,* 26 NY2d 101; *People v Archiopoli,* 39 AD2d 748.) Further, there was an abandonment of the bag. (*People v Brown,* 40 AD2d 527.) Concur — Kupferman, J. P., Birns, Fein, Markewich and Sandler, JJ.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PHILIP YUAN, Appellant.—Judgment, Supreme Court, Bronx County, rendered June 24, 1977, convicting the defendant on his plea of guilty to manslaughter in the first degree, unanimously modified, as a matter of discretion in the interest of justice, to reduce the indeterminate sentence of 7 to 21 years to a sentence of not less than 5 nor more than 15 years, and otherwise affirmed. This was the defendant's first conflict with the law, he was 17 years of age at the time, and he was less culpable than his accomplice who received an indeterminate sentence of 8⅓ to 25 years. Concur—Kupferman, J. P., Silverman, Fein and Sandler, JJ.

■ CHRISTIE'S (INTERNATIONAL) S. A., Respondent, v ADRIAN GUGLIARDA, Appellant.—Order, Supreme Court, New York County, entered May 12,

1978, granting plaintiff's motion for summary judgment and denying defendant's cross motion for summary judgment is unanimously modified, on the law, without costs and without disbursements, to deny plaintiff's motion for summary judgment and to direct the service of formal pleadings, and is otherwise affirmed. As the result of a transaction between plaintiff and one Frascarolo, the latter had uttered a check to plaintiff which was subsequently dishonored. Frascarolo had indorsed and supposedly delivered to a Swiss firm (Golay) three promissory notes made by defendant payable to Frascarolo. The Swiss firm had vouched to plaintiff for Frascarolo. Golay, out of a moral responsibility, delivered the notes to plaintiff. On the due dates plaintiff presented the notes for payment and payment of each was refused. It seems that Mr. Frascarolo had agreed to deliver certain jewelry to the defendant, but insisted on receiving the notes in advance as collateral. This was pursuant to the regular course of business whereby the defendant would write the notes to Frascarolo who would then buy jewelry for the defendant to resell. Defendant would use the proceeds to cover the notes. Frascarolo allegedly failed to deliver the jewelry. Among its defenses defendant raises the question of authenticity of Frascarolo's indorsement of the notes contending that the signatures are forgeries and part of a fraudulent scheme. In substantiation, an affidavit is submitted by a handwriting expert which states that the signature on the check given by Frascarolo to the plaintiff and Frascarolo's indorsements on the promissory notes were not made by the same person. The fact that the expert rendered an opinion without giving his reasons still leaves a triable issue of fact, for an "expert may state his opinion without further foundation." *(Tarlowe v Metropolitan Ski Slopes,* 28 NY2d 410, 414; see, also, CPLR 4515; 5 Weinstein-Korn-Miller, NY Civ Prac, par 4515.03, p 45-334.) The proceeding here was instituted by a motion for summary judgment in lieu of complaint (CPLR 3213). In considering relief of this type, the court must be convinced that no issues exist which would warrant a plenary proceeding. A remedy which precludes a litigant from presenting his evidence to a Judge or jury is one which should be used sparingly. "Summary judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a triable issue" *(Moskowitz v Garlock,* 23 AD2d 943, 944). The granting of such a motion "is the procedural equivalent of a trial" *(Crowley's Milk Co. v Klein,* 24 AD2d 920). It clearly appears here that material and triable issues of fact are raised which do not accommodate themselves to resolution upon a motion of this sort. The status of plaintiff, the circumstances under which it received the notes and the genuineness of Frascarolo's indorsements thereon are among the arguable issues of fact in this record. In the circumstances, this lawsuit should proceed upon formal pleadings. Concur—Birns, J. P., Silverman, Evans, Fein and Lane, JJ.

■ In the Matter of Alphonso Brignoni, Respondent, v New York State Labor Relations Board, Appellant.—Judgment, Supreme Court, New York County, entered June 21, 1977, granting the petition to the extent of remanding for a hearing, unanimously reversed, on the law, and the petition dismissed, without costs or disbursements. At a minimum, there is no showing of abuse of discretion by respondent board in refusing to involve itself in this dispute by deciding not to issue a complaint. We do not pass on the question of plaintiff's standing or the judicial reviewability of the board's action. Treating this matter as an article 78 proceeding, leave to appeal to this court is granted *sua sponte* by Birns, J. P. (See CPLR 5701, subd [b], par 1; subd [c]; see, also, *Matter of Mid-Island Hosp. v Wyman,* 15 NY2d 374.) Concur—Birns, J. P., Silverman, Evans, Fein and Lane, JJ.

■ JUANA VALENTIN, Respondent, v MILTON RINDER et al., Appellants.— Order of the Supreme Court, Bronx County, entered February 27, 1978, denying defendants' motion to dismiss plaintiff's action for failure to serve a timely complaint pursuant to CPLR 3012 (subd [b]), or alternatively, to dismiss the action for failure to prosecute pursuant to CPLR 3215 (subd [c]), unanimously reversed, on the law and on the facts, and the complaint dismissed, without costs and disbursements. It appears that plaintiff served defendant's prior counsel with a copy of the complaint on June 28, 1974, pursuant to defendants' demand and in compliance with CPLR 3012 (subd [b]). Defendants did not, however, interpose an answer. Nevertheless, plaintiff failed to move for entry of default judgment until November, 1977, after the one-year period prescribed by CPLR 3215 for taking such proceeding subsequent to the default had expired. Accordingly, under the provisions of CPLR 3215 (subd [c]), the court was required to dismiss the complaint as abandoned, unless " 'sufficient cause' * * * why [the complaint] should not be dismissed" was shown *(Herzbrun v Levine,* 23 AD2d 744). In order to demonstrate "sufficient cause", it was necessary for plaintiff to present a valid excuse for her delay in proceeding with the action and to evidence a meritorious claim (see *Sortino v Fisher,* 20 AD2d 25, 32; *Milligan v Hycel Realty Corp.,* 20 AD2d 527). Plaintiff has done neither. The excuse offered by plaintiff for the delay is insufficient. The allegations of plaintiff's attorney that repeated, unsuccessful attempts were made to obtain an answer from defendant are not supported in any substantive manner. The first such indication in the record appears as of June, 1977, when plaintiff sent defendants a second copy of the complaint, three years after defendants' default in pleading. Although plaintiff may not have been served with a copy of the order entered May 21, 1976 substituting defendants' present counsel for defendants' prior counsel, nevertheless there is nothing in the record to show that plaintiff made any effort to ascertain the reason communications to defendants' counsel before that date (defendants' prior counsel) were unanswered. "The duty of prosecuting [an] action rests upon the [person] who brings it, not [the party] who defends it" *(Sortino v Fisher, supra,* p 30). Plaintiff has not fulfilled this obligation. There is no affidavit in the record showing by evidentiary detail a meritorious cause of action *(Sortino v Fisher, supra,* pp 31-32). Concur—Birns, J. P., Silverman, Evans, Fein and Lane, JJ.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUZ BAEZ, Appellant.—Judgment of the Supreme Court, New York County, rendered January 19, 1976, unanimously affirmed. Application by appellant's counsel, pursuant to *Anders v California* (386 US 738) and *People v Saunders* (52 AD2d 833), to withdraw as counsel, denied. Although counsel sees no meritorious arguments on this appeal, we disagree and do find that arguable, nonfrivolous issues have been raised. Consequently, we deny counsel's motion to withdraw. Nevertheless, after considering these arguable issues, we find insufficient grounds for reversal. Concur—Kupferman, J. P., Lupiano, Fein and Sullivan, JJ.

■ In the Matter of JOHN M. MARINO, Appellant, v JAMES P. MELTON, as Commissioner of the New York State Department of Motor Vehicles, Respondent.—Order and judgment (one paper), Supreme Court, New York County, entered March 3, 1978, unanimously affirmed, without costs and without disbursements. This proceeding should have been transferred to this court for initial review of the commissioner's determination. Nevertheless, we have considered the record as if the matter reached this court in the

proper manner (see *Matter of D. H. K. Rest. v New York State Liq. Auth.,* 31 AD2d 525, affd without opn 28 NY2d 836) and, upon such consideration, we find the determination supported by substantial evidence and we reject appellant's constitutional challenge, especially since he disclaimed having difficulties with alcohol. Concur—Kupferman, J. P., Lupiano, Fein and Sullivan, JJ.

◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PEDRO GARCIA, Appellant.—Judgment of the Supreme Court, Bronx County, rendered January 3, 1977, unanimously affirmed. Application by appellant's counsel pursuant to *Anders v California* (386 US 738) and *People v Saunders* (52 AD2d 833), to withdraw as counsel denied. Counsel has argued the merits and urged reversal herein. The procedure of *People v Saunders (supra)* is therefore, unavailable *(People v Shaw,* 59 AD2d 873). Concur—Kupferman, J. P., Lupiano, Birns and Fein, JJ.

◼ RHODIA W. MANN, Appellant-Respondent, v EDWARD WASSERBERGER, Respondent-Appellant.—Judgment, Supreme Court, New York County, entered February 6, 1978, which denied plaintiff alimony and awarded her counsel fees is unanimously modified, on the law and the facts and in the exercise of discretion, so as to deny counsel fees and is otherwise affirmed, without costs and without disbursements. The parties were married in 1966, and there are two minor issues of the marriage. In 1972 plaintiff began an action for divorce. After defendant produced proof of plaintiff's adultery the parties entered into a separation agreement in which defendant agreed to pay alimony for five years from that date and also received custody of the children. The agreement also contained mutual waivers of any claims the parties may have against one another. Plaintiff brought a habeas corpus proceeding in 1972, and after her adultery was established the trial court awarded her custody; on appeal this court reversed and restored custody to defendant. *(People ex rel. Wasserberger v Wasserberger,* 42 AD2d 93, affd 34 NY2d 660.)* Afterward the plaintiff withdrew her allegations in her still pending divorce action and substituted a conversion divorce claim under subdivision (6) of section 170 of the Domestic Relations Law based on the separation agreement. That stipulation contained plaintiff's admission of adultery and acknowledged that she was not entitled to alimony. Thereafter, a judgment of divorce was granted and the separation agreement was incorporated but not merged in the judgment. On the eve of expiration of the five-year agreement for alimony, plaintiff asserted a claim for permanent alimony. The trial court refused stating that defendant "could have successfully defended her *[sic]* divorce action, or he might have instituted an action of his own and prosecuted it successfully. In either event, plaintiff could have received no alimony. It is well settled that no award of alimony may be made to a wife where her misconduct would constitute grounds for separation or divorce (Domestic Relations Law, section 236; Math v. Math, 39 A D 2d 583, affd. 31 N Y 2d 693; Recht v. Recht, 36 A D 2d 939 * * *; Spearman v. Spearman, 49 A D 2d 837 * * *)." In *Carter v Carter* (52 AD2d 835) the parties agreed that the husband would pay alimony and that the agreement would survive the decree. "The trial court, however, deleted the alimony provision before signing the proposed judgment on the ground that section 236 of the Domestic Relations Law precluded an award of alimony as the divorce was based on the wife's misconduct." In *Vranick v Vranick* (41 AD2d 663) plaintiff "contends that the settlement constituted a waiver of the provisions of section 236 of the Domestic Relations Law. Assuming *arguendo* that there was such a waiver, it was limited by the terms of the

settlement to a period of only three years. It is our opinion that as between the parties the stipulation constituted a valid enforceable contract to pay a certain sum for three years as alimony. While plaintiff could properly sue to enforce this agreement, it was error to grant her motion to modify it. The court does not have the power to modify or alter a stipulation in any material detail without the assent of both parties absent fraud or overreaching *(Shapiro v. Danzig,* 267 App. Div. 949; *Galusha v. Galusha,* 116 N. Y. 635, 646)." Thus the agreement here could not be extended beyond the stated period; and plaintiff was not entitled to alimony under the Domestic Relations Law. Plaintiff argues that a husband cannot validly contract to relieve or restrict his obligation to support his wife, citing section 5-311 of the General Obligations Law. Defendant had no liability under section 236 of the Domestic Relations Law to support the adulterous plaintiff. Therefore, the agreement does not offend section 5-311 of the General Obligations Law. Though counsel fees may not be awarded in nonmatrimonial causes, on an application to modify a visitation order, subdivision (b) of section 237 of the Domestic Relations Law does permit the court to "direct the husband or father to pay such sum or sums of money for the prosecution or the defense of the application or proceeding by the wife or mother as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties." Plaintiff merely sought expanded visitation. No misconduct by defendant was involved. The counsel fee for that aspect of the case should not have been awarded at all. Moreover, plaintiff made a substantial payment to her lawyers. She possesses her own assets and is unable to make a convincing showing that she lacks the resources to pay her own counsel fees. Thus, no counsel fee should have been awarded with respect to the alimony issue, either *(Kann v Kann,* 38 AD2d 545). Concur—Lupiano, J. P., Evans, Markewich and Sullivan, JJ.

■ ROBERT J. McGUIRE, as Police Commissioner of the City of New York, Respondent, v I. MICHAEL KRANE et al., Appellants.—Judgment, Supreme Court, New York County, entered on June 5, 1978, affirmed, without costs and without disbursements. Concur—Birns, Silverman, Markewich and Sandler, JJ.; Kupferman, J. P., concurs in part and dissents in part in the following memorandum: The Police Commissioner of the City of New York has been granted an injunction against solicitation of funds by the Patrolmen's Benevolent Association of the City of New York (PBA) in the nature of contributions or donations for a souvenir journal in connection with the 1978 Policemen's Ball. It is contended that the solicitation violates rules of the police commissioner and is in derogation of his statutory authority to administer the department. Inasmuch as the ball is over, our "after"-consideration can be with the implications of the ruling. Although the date of the specific function has passed, the matter is of significance. (See *People ex rel. Donohoe v Montanye,* 35 NY2d 221, 224; *Matter of National Organization for Women v State Div. of Human Rights,* 34 NY2d 416, 419; *Matter of Gold v Lomenzo,* 29 NY2d 468, 475-476.) The PBA is a labor organization separate and apart from the police department. Concededly, the PBA is the recognized bargaining representative for the members of the police department. This labor organization has entered into an agreement with a fund raiser for the purposes interdicted. No policeman in his individual capacity is involved in the solicitation of funds. If a contribution is made, the contributor receives a sticker with the PBA insignia and

the legend "May the Force be with you".* It is contended that the use of such a sticker by a motorist may lead a member of the force to ignore a violation and thus abjure his duty. However, this is a union label, and we have oft been told that we should "look for the union label". Moreover, injunctions in labor disputes are frowned upon. (Cf. Labor Law, § 807.) The fund raiser receives, under the solicitation contract in question, 60% of the proceeds, with 40% being returned to the PBA for use for the announced purpose of purchasing bullet proof vests, emergency financial assistance, canteen expenses, and to further union objectives. That the amount paid to the fund raiser for the solicitation seems inordinately high might be postulated as a ground for injunction. However, it may be that that is a matter rather for the Attorney-General. (Cf. Executive Law, § 175 [former Social Services Law]; General Business Law, § 349.) In any event, the injunction was granted based on the broad powers of section 434 of the New York City Charter gives to the police commissioner in the administration and discipline over the police department and its members, rather than because a specific contract may contain terms that are excessive. There is also the issue of discriminatory enforcement. There are other police oriented organizations, which raise funds from the public, e.g., Police Athletic League (PAL), *Spring 3100,* a magazine, the "house organ" of the police department. PAL also gives a sticker. While some may think of these organizations as more worthy or in greater need of support, that should really be an issue of fact. (See *Matter of Di Maggio v Brown,* 19 NY2d 283.) This matter deserves more consideration than a simple enforcement of the fiat of the police commissioner, and there should be a remand for a hearing forthwith with respect to the question of a permanent injunction.

■ MEDICUS BROWN, Appellant, v THOMAS CHIN, Respondent.—Order, Supreme Court, New York County, entered May 9, 1978, granting defendant's motion to conduct a physical examination of plaintiff in an action for personal injuries, affirmed, without costs and without disbursements. Contrary to the comment in the dissent, we do not suggest that I. C. Parts are exempt from the Rules of the Supreme Court. We hold only that the particular responsibilities of a Judge to whom a case is assigned for trial is entitled to consideration in evaluating his exercise of discretion. It is surely pertinent that the trial court could reasonably have concluded that defendant had been led to believe that the plaintiff would interpose no objection to a physical examination which had been long planned. Concur—Kupferman, J. P., Silverman and Sandler, JJ.; Birns and Markewich JJ., dissent in a memorandum by Birns, J., as follows: Defendant's motion was made on May 5, 1978, five years after plaintiff served a notice upon defendant in June, 1973 for physical examination by a physician of defendant's choice and one year after plaintiff filed her statement of readiness in May, 1977. The motion was predicated upon defendant's allegations that the notice of June, 1973 was received by defendant in July, 1973, too late to comply therewith, and that since July, 1974 defendant had attempted for an extended period of time to obtain the physical examination of plaintiff, without success. Defendant's failure to move, within 20 days from the date plaintiff filed her statement of readiness, to strike the case from the calendar, constituted a waiver of his right to conduct such examination *(Price v Brody,* 7 AD2d 204, 205; Rules of the Supreme Court, New York and Bronx Counties, 22 NYCRR 660.4 [d] [3]). Although we are aware that the case at bar was in an I. C.

---

* This line is undoubtedly brought to mind by the motion picture "Star Wars".

Part and the Justice assigned to that part is afforded great latitude in the control and management of the calendar before him, nevertheless defendant failed to show any "special, unusual or extraordinary" circumstances justifying the exercise of discretion to grant defendant's motion notwithstanding 22 NYCRR 660.4 (d) (3). *(Price v Brody, supra,* pp 205-206; Rules of the Supreme Court, New York and Bronx Counties, 22 NYCRR 660.4 [d] [7] [i]). We are not prepared to say, as does the majority, that the I. C. Parts are exempt from the foregoing rules.

■ In the Matter of MURRAY FELDSTEIN, Petitioner, v THOMAS APPLEBY, as Administrator of the Housing and Development Administration, Respondent.—In this article 78 proceeding transferred to this court for review, the determination of the Administrator of the New York City Housing and Development Administration (HDA) made after a departmental hearing, finding petitioner guilty of two charges of misconduct and violation of the rules and regulations of HDA and the Charter and Administrative Code of the City of New York, is unanimously modified, on the law, to vacate the penalty of dismissal, and the matter remanded for the imposition of a lesser penalty, and otherwise confirmed, without costs and without disbursements. The petitioner was charged with accepting two gratuities. He has been in the city's employ for a period of 31 years, during the last 11 of which he has been a supervising clerk with HDA. It was shown that a civilian agent for the City Department of Investigation put these two gratuities in the petitioner's drawer or hand, but although there were recorded conversations, there was no evidence that the gratuity was ever demanded or solicited. Under the circumstances, in view of the petitioner's length of service and the fact that there was no "bribe-taking" as such, (see *Matter of Chilson v Board of Educ.,* 34 NY2d 222, 237), there should be an adjustment of the penalty. Concur—Kupferman, J. P., Birns, Silverman, Markewich and Sandler, JJ.

■ JOSEPH COLONEL, Respondent, v TARGEE CONTRACTING CO., INC., Appellant.—Order, Supreme Court, Bronx County , entered on or about June 13, 1978, granting plaintiff's motion to set aside a release, amend the *ad damnum* clause and transfer the case from the Civil Court, unanimously reversed, on the law, without costs and without disbursements, and plaintiff's motion denied in all respects. Plaintiff sustained injuries on September 24, 1974, when he allegedly fell nine feet into an unguarded construction hole, which had been dug by the defendant for the installation of a gas tank. In the Civil Court action, plaintiff's bill of particulars claimed multiple contusions and abrasions of both lower extremities, sprain of both feet and ankles and "traumatic phlebitis of the left upper leg." That action was settled before trial for the sum of $2,750. Plaintiff apparently authorized the settlement and approved it when he executed a general release on December 14, 1976. Although a stipulation of discontinuance was signed by plaintiff's attorneys, the record does not reflect whether the stipulation was executed on behalf of defendant and thereafter filed. However, on the date the settlement check was indorsed and deposited in plaintiff's attorneys' special account, plaintiff advised counsel that (1) he had been under the care of a physician since November, 1976 for an ingrown toenail with an abcess formation on his big right toe; (2) he had been in pain and unable to sleep for approximately 71 days; and (3) hospitalization was required. In the hospital the toe was amputated because gangrene had set in. Eight months later plaintiff brought on this motion to vacate the release and for leave to increase the *ad damnum* clause of the complaint to $250,000 and to transfer

the case to the Supreme Court. Special Term granted the application, finding that there was a mutual mistake as to the existence and consequences of an unknown injury. We disagree. Upon this record we do not perceive proof sufficient to establish mutual mistake so as to warrant vacatur of the release. The letter submitted by Dr. Tacktill, the treating physician, reports that plaintiff had been undergoing treatment for the abcess formation on the right big toe, which resulted from an ingrown toenail, from November 8, 1976 through December 23, 1976. It is plain that at the time plaintiff executed the general release, he was being treated for the very condition of which he now claims he was unaware. The record does not support Special Term's finding of mutual mistake as to the existence and consequences of an unknown injury. Rather, the proof indicates either a mistake as to the consequences or future course of a known injury, insufficient to vacate a general release (Mangini v McClurg, 24 NY2d 556; Viskovich v Walsh-Fuller-Slattery, 16 AD2d 67, affd 13 NY2d 1100) or an unrelated injury. Moreover, even had no release been executed, the moving papers are patently insufficient to support the application for leave to increase the ad damnum clause and to transfer the case from the Civil Court. Such a motion must be supported by a proper physician's affidavit which demonstrates the nature of the injury, its prospective consequence, resulting disability and causal relationship between the disability and the original injuries sustained (Ferrari v Paramount Plumbing & Heating Co., 20 AD2d 878; Goldfarb v 65 East 11th St. Corp., 40 AD2d 657). Although Dr. Tacktill's letter reports that he and Dr. Pai were of the opinion that the impaired circulation which caused the gangrene of the right big toe was causally related to the accident of September 24, 1974, the report of Dr. Pai expresses no opinion as to causal relationship. Dr. Pai's report merely states that plaintiff related his pain to the 1974 accident. Somewhat contradictory is the statement in the report that when first examined by Dr. Pai on January 7, 1977, plaintiff complained of pain in the toe "and being unable to sleep for 71-days because of severe pain." Moreover, the hospital report annexed to the moving papers records as history an intervening fall by plaintiff in 1975, an event which neither physician discusses in relation to plaintiff's claim that the impaired circulation and gangrenous condition of the right big toe, which required amputation, was causally connected to the 1974 accident. We do not reach the question whether Special Term improperly entertained the motion since the action had apparently been discontinued by the execution and delivery of a stipulation of discontinuance by plaintiff's attorneys, which could only be set aside in a plenary action. (Yonkers Fur Dressing Co. v Royal Ins. Co., 247 NY 435.) Nor do we pass upon the propriety of the Supreme Court's assumption of jurisdiction over this attempt by motion to vacate the stipulation of discontinuance in the Civil Court. Concur—Lupiano, J. P., Fein, Lane, Markewich and Sullivan, JJ.

■ AVNET, INC., Appellant-Respondent, v AMERICAN INTERNATIONAL LIFE ASSURANCE COMPANY OF NEW YORK, Respondent-Appellant.—Order, Supreme Court, New York County, entered May 15, 1978, denying plaintiff's motion and defendant's cross motion for summary judgment, unanimously modified, on the law, with $75 costs and disbursements to plaintiff-appellant-respondent by reversing so much thereof as denied plaintiff's motion, and the motion granted, and, as so modified, affirmed. This action arises out of a dispute over the coverage of an insurance policy issued June 20, 1975, effective July 1, 1975, by defendant American International Life Assurance Company of New York to plaintiff, Avnet, Inc. The policy stated that

plaintiff was insured against any disability benefits it was required to pay "under Section 204 of Article 9 of the Workers' Compensation Law of the State of New York or any laws amendatory thereof or supplementary thereto which may become effective during the Policy period". On December 20, 1976, the Court of Appeals in *Brooklyn Union Gas Co. v New York State Human Rights Appeal Bd.* (41 NY2d 84) held that pregnancy-related disabilities must be compensated pursuant to the New York Disability Benefits Law (DBL) as supplemented by the Human Rights Law (HRL). Despite the fact that pregnancy benefits were excluded by subdivision 3 of section 205 of the Disability Benefits Law (Workers' Compensation law, art 9), the Court of Appeals stated (p 88) that the DBL and HRL must be read together to impose "two concurrent independent minimum standards" and that "Whichever statute imposes the greater obligation is the one which becomes operative". Subsequently, the State Legislature amended the DBL to provide for eight weeks of maternity disability benefits, which amendment became effective August 3, 1978. Plaintiff's submission to defendant of disability benefit claims relating to pregnancy in light of *Brooklyn Union Gas Co.* were rejected on the ground that the DBL excluded such disability and plaintiff was obligated to purchase a "rider" to the policy to cover future pregnancy-related disability claims. As of January 1, 1978, plaintiff had paid $7,905.42 for the rider. Plaintiff commenced the instant action seeking a declaration of its rights under the policy. Recognizing that the only issue before us is a legal one of construction of an unambiguous contract of insurance and mindful that "policies of insurance, drawn as they ordinarily are by the insurer, are to be liberally construed in favor of the insured" (*Miller v Continental Ins. Co.,* 40 NY2d 675, 678), it is clear that the holding in *Brooklyn Union Gas Co.* is dispositive and that the HRL is "supplementary" to the DBL. Accordingly, plaintiff is entitled to summary judgment declaring that defendant is required to pay disability benefits to plaintiff's employees for disabilities arising out of or in connection with pregnancy together with the sum of $4,395.24 for benefits already paid by plaintiff and the sum of $7,905.42 for the cost of the additional premiums paid by plaintiff. Concur—Lupiano, J. P., Fein, Lane, Markewich and Sullivan, JJ.