■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JOSEPH FRIPP, Respondent. — Order, Supreme Court, New York County (B. Altman, J.), entered on June 9, 1980, granting the defendant's motion to suppress physical evidence, is affirmed. Appeal from order of said court (G. Roberts, J.), entered on January 5, 1981, is dismissed as moot. On February 28, 1980, approximately eight police officers from a combined Federal task force, all of whom were not in uniform, were executing a search warrant for drugs and a .38 calibre revolver, which were to be found in Apartment 2-A, at 639 West 173rd Street. While this search was in progress, a buzzer, located in the lobby, was rung, indicating that someone desired to enter this multiple dwelling. No agents were positioned in or around the lobby. Three or four agents then stationed themselves in the vestibule on the second floor. On this particular floor there were at least three other doors. One door led to the elevator, one to an adjacent apartment and the third to an interior stairwell, from where the defendant emerged a few minutes later. As the defendant came through this door, the agents identified themselves, grabbed defendant by the wrists, spun him around and pushed him "spreadeagled" up against the wall. A rectangular brown leather purse, which was approximately eight or nine inches long, by six inches wide, was seized and a 9mm gun found therein. The court determined that the authorities lacked probable cause to arrest and that the gun was impermissibly seized. The People now assert that defendant was not arrested until after the gun was seized and that they only had to prove that this "minimal" stop and search was based on a reasonable suspicion that defendant was involved in criminal activity. We must reject these arguments as unpersuasive. While we recognize that not every encounter between a private citizen and law enforcement authorities amounts to a seizure (People v De Bour, 40 NY2d 210, 216), the conclusion here is inescapable that once defendant was grabbed and thrust up against the wall, he was arrested. Indeed there can be hardly an argument that once this course of conduct was initiated, defendant's liberty was significantly interrupted (People v Cantor, 36 NY2d 106, 111) and that he was seized within the meaning of that term. No predicate existed for the intrusive action of these agents. No one was stationed in the lobby to verify if defendant was the person who sought entrance. The authorities could not tell, nor did they attempt to determine, where defendant was coming from or the reason for his visit to the second floor. Although defendant was carrying a small zippered purse, which was closed and which could be utilized for many forms of noncriminal behavior, no telltale signs, such as a bulge or an outline of a gun, were observed. In addition, the dissent has made findings of fact, i.e., "defendant moved his right hand to the bag, * * * and turned back towards the stairwell door" whereas the suppression court rejected this testimony. In any event, the conduct of the defendant is capable of more than one interpretation, the least of which is consistent with innocence. These agents erred when they forcibly seized the defendant without first making an inquiry to confirm or deny their naked suspicions that defendant was armed and involved in criminal activity. Since we are affirming the order of suppression, we see no reason to treat with the subsequent order dismissing the indictment, and merely dismiss this order as moot. Concur — Kupferman, J. P., Ross and Fein, JJ.

Birns and Silverman, JJ., dissent in a memorandum by Silverman, J., as follows: We would reverse the order appealed from, deny the motion to

suppress, and reinstate the indictment. The officers (Federal and city) had at least sufficient reason to seize the bag involved in order to secure their own safety while continuing their investigation and their police function. (See *People v McLaurin*, 43 NY2d 902, revg on opn of Nunez, J., 56 AD2d 80.) In the present case special agents of the New York Drug Enforcement Task Force were sent to Apartment 2-A at 639 West 173rd Street to execute a Federal search warrant which specified drugs and a revolver to be found in the apartment. Obviously this was enough to alert the officers to the likelihood that there would be a revolver; indeed it was a judicial determination that there was probable cause to believe that there was a revolver. While they were executing their search, the defendant entered a door on that floor which led only to the apartment being searched and another apartment. In our view it does not matter whether the defendant was the person who sounded the buzzer from the street or came from another floor. He was still coming either to the apartment that was being searched or the other apartment on the floor. However, the fact that the buzzer had sounded in the apartment being searched was an additional indication to the officers that the person who appeared was going into the apartment that was the subject of the search warrant. Defendant was carrying a leather bag described, by two officers who testified, as the kind of bag that police officers use to carry off-duty pistols. One of the officers said that he never had seen such a bag used for any other purpose, the other said that it was most often used to carry guns but that he had known it to be used by civilians for other purposes. This was surely enough to heighten the officers' belief that they were confronted by someone carrying a gun. The agents identified themselves as police. Defendant moved his right hand to the bag, bringing his hand to the front of his body and turned back towards the stairwell door. One of the officers seized the bag and the other seized the defendant's wrist. The bag was opened and it of course contained a loaded automatic pistol. We think the officers were quite justified in their belief that they were probably confronted by a man with a gun; that their actions were reasonable to secure their own safety as well as the execution of the warrant. An officer does not have "to await the glint of steel before he can act to preserve his safety." *(People v Benjamin*, 51 NY2d 267, 271.)