FOURTH DEPARTMENT, DECEMBER, 1984

(December 14, 1984)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LINWOOD ROBERTS, Appellant. — Judgment reversed, on the law and the facts, motion to suppress granted and matter remitted to Supreme Court, Erie County, for further proceedings under Superior Court information No. 3121. Memorandum: On this appeal defendant contends that the police lacked probable cause to arrest him and that the evidence obtained from the ensuing search of his person should be suppressed. We agree. Following the sale of cocaine to a police undercover agent, Joseph Maury was observed on February 17, 1982, by drug enforcement agents entering a black 1976 Pontiac automobile driven by an unidentified male and registered to Maury's brother. A further sale of cocaine by Maury was arranged by the undercover agent to take place at a Buffalo restaurant on March 17, 1982 after Maury procured the drugs from a "source of supply" at the airport. Following the conclusion of this sale, the preconceived plan of the police, in the event that the same automobile was involved, was to stop and seize the car, arrest the occupants thereof and charge them with conspiracy in connection with the sale and possession of a controlled substance. Joseph Maury in fact arrived at the restaurant in the same black Pontiac driven by a male later identified as George Maury in which defendant was a passenger. After Joseph Maury left the car and made the sale to the undercover agent, he was arrested. The Pontiac, which had been observed by the police circling the area, was then stopped about 100 feet away and both occupants were ordered from the car by the police. In the search that followed, a quantity of cocaine was found on defendant's person. When his suppression motion was denied, the defendant entered a plea of guilty.

At the suppression hearing, the police testified in a forthright manner that they intended to arrest any occupants of the car and in fact did arrest them when they were removed from the vehicle. The People concede that the arrest preceded the search. Contrary to the conclusions reached by the dissent, there is no factual basis in the record from which it could logically be

concluded that the "supplier" would be found in the vehicle at the time the sale was to take place. In fact when Special Agent Mangor was specifically asked what information the undercover agent gave him preceding the arrests, he stated: "I was advised by the undercover officer Kaempf that she had been told by Joseph Glen Maury that he would arrive there at a specific time, at approximately seven o'clock, that he was waiting the arrival of the source of supply, who was to deliver the cocaine to him, and that he [Maury] would proceed directly from the airport to the Your Host Restaurant, where he would sell her the cocaine." Defendant, who was not known to the police and had not previously been suspected of having any connection to Maury's narcotics trade, was merely an occupant of Maury's brother's car. His presence in the vehicle was not sufficient to justify his arrest as a coconspirator with Maury (see *People v Milerson*, 51 NY2d 919). The police had no more than a reasonable suspicion that defendant was involved in the drug transaction taking place outside the restaurant and this suspicion could not be elevated to probable cause simply because defendant was a passenger in the car which circled while the transaction took place. The record is clear that defendant was arrested before the search which uncovered the cocaine (see *People v Fripp*, 85 AD2d 547, affd 58 NY2d 907). Furthermore, the "inevitable discovery" rule (see *People v Fitzpatrick*, 32 NY2d 499, 506-507, cert den 414 US 1033), upon which the People rely, is inappropriate (see *People v Buffardi*, 92 AD2d 899). The inevitable discovery exception allows the courts to receive evidence the police could have discovered by legal means notwithstanding the illegal search, but was not intended to serve as a means to validate the illegal search. Because the defendant was arrested without probable cause, the ensuing search was unlawful and the evidence must be suppressed.

All concur, except Hancock, Jr., J. P., who dissents and votes to affirm in the following memorandum.

Hancock, Jr., J. P. (dissenting). I disagree. According to the testimony of DEA Special Agent Mangor, who was the "case agent" in charge of surveillance for the operation, the police had reason to expect, based on the investigation including information gleaned by the undercover officer Mary Pat Kaempf during telephone conversations with Joseph Maury, from whom she had arranged to buy cocaine, that Maury "was awaiting the arrival of the source of supply, who was to deliver the cocaine to him", that Maury and a driver would go to the airport on March 17, 1982 to pick up the supplier, and that Maury would proceed directly to the Your Host Restaurant at 7:00 P.M. on that day in

a black 1976 Pontiac registered to his brother George *"with a driver and the source of supply for the cocaine"* (emphasis added). When asked what he took into consideration in determining that if the black 1976 Pontiac was present at the scene police would stop the vehicle and arrest the occupants, Mangor replied: "Well, based on the fact that information relayed to us *from the undercover telephone conversation* that he [i.e., Maury] would be driven there * * * from the airport to the Your Host Restaurant *after they had picked up the person who was going to deliver the cocaine"* (emphasis added). In my opinion, any fair reading of the record supports the conclusion that Agent Mangor had been informed by Kaempf that the supplier would arrive at the restaurant with Maury. The officers had arranged with Kaempf that she would signal to them when the sale was consummated by standing behind the trunk of her automobile.

On March 17, 1982, at the appointed place and time, the police observed the Pontiac arrive with a driver and Maury and a third person who, at that point, they could well have suspected was the drug supplier. Maury entered the restaurant and emerged shortly thereafter with Kaempf. The two entered Kaempf's car; then Kaempf got out of her car and went to a point behind the trunk where she stood, thus signaling the officers that she had bought the drugs from Maury. Upon seeing Kaempf signal that the buy had been made, the police could have been virtually certain that the drugs exchanged had been provided by the third man in the car. When Kaempf stood behind the car the police must have assumed that everything had gone in accordance with the plan, i.e., that the "source of supply" — the third man in the car — had been picked up at the airport and that Maury and the driver had brought him and the drugs to the restaurant where Maury had exchanged the drugs for money. Indeed, it strains reason to think that they could have thought otherwise.

Probable cause exists where " 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed" (*Brinegar v United States,* 338 US 160, 175-176). Here, the information given the officers by Kaempf as to the details of the plan and their observations of the events which fulfilled the plan in every particular gave the officers ample ground to believe that the third man (the defendant) was the "source" and that he was guilty of either selling cocaine or conspiring to sell it. They had more than necessary probable cause to make the arrest. That in the particular portion of his testimony quoted by the majority

Agent Mangor does not mention that Kaempf told him that the source would be driven to the restaurant is of no consequence. He obviously had this information and from other answers in the record it is clear that it came from Kaempf. Logically, it could not have come from any other source.

Even assuming that the police lacked probable cause to arrest defendant for his complicity in the sale (and that the arrest was therefore invalid), I would not suppress the evidence (cocaine) found in his trench coat pocket after he was patted down. The discovery and seizure of that evidence may be supported on a basis that is entirely discrete from and not dependent upon the arrest. Knowing that the car (if not defendant) was involved in the drug transaction, the police, at the very least, had authority to stop the car (see *People v Singleton,* 41 NY2d 402; *People v Ingle,* 36 NY2d 413) and to order the occupants to get out (see *People v Lathigee,* 84 AD2d 198, citing *Pennsylvania v Mimms,* 434 US 106). Certainly, *after* (and arguably before, as well) Agent Iwinski found a weapon during the frisk of George Maury, they had the right to pat down defendant (see CPL 140.50, subd 3; *People v Chestnut,* 51 NY2d 14, cert den 449 US 1018; *People v Jackson,* 72 AD2d 149, 154), and, upon feeling "a hard object", to reach into defendant's pocket to be sure it was not a weapon. Thus, even absent probable cause to arrest, the search was justified (see, generally, *Terry v Ohio,* 392 US 1). (Appeal from judgment of Supreme Court, Erie County, Flynn, J., at trial, McCarthy, J., at suppression hearing — criminal sale of controlled substance, fourth degree.) Present — Hancock, Jr., J. P., Denman, Green, O'Donnell and Schnepp, JJ.