■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARTRELLA FLANAGAN, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered June 14, 1972, convicting him of attempted possession of a weapon, etc., as a felony, upon his plea of guilty, and imposing sentence. The appeal brings up for review an order of the same court, dated May 25, 1972, which denied defendant's motion to suppress physical evidence. Judgment reversed, on the law, motion to suppress granted, and indictment dismissed. The findings of fact are affirmed. At the hearing on defendant's motion to suppress physical evidence, the sole witness for the prosecution was Patrolman Roy Lucien, Jr. Lucien testified that he was assigned to the anticrime unit of the 103rd Precinct and that he had been a member of the unit for about a year and a half. On March 10, 1972 (two months before the hearing), at about 12:30 A.M., he and his partner, Patrolman Bartone, were stationed in an unmarked car in the vicinity of 107th Avenue and New York Boulevard in Queens. Their vehicle was painted to look like a taxicab, but contained a police radio. Lucien

described the area as "a very heavy drug prone location", where numerous arrests for stolen cars and other stolen property are made. On the night in question, the officers were parked about a half block from a bar on New York Boulevard which was "under observation". They were facing toward the bar and were parked across the street from it. The patrolmen observed a late model Cadillac pull up and double-park outside the bar. The only one in the car was the driver; he did not get out of the car. The car remained double-parked for "not even one minute", and then drove off. The car appeared again a short time later (Lucien stated that it "went around the block"), double-parked in the same place and, within "less than a minute", drove off a second time. At that point Lucien told his partner that he "intended to stop [the car] and check the car out." The Cadillac went around the block and the officers proceeded in a different direction to head it off. They did so on a narrow street by pulling in front of the Cadillac, "head to head", so that both cars had to come to a stop. Lucien observed the driver of the Cadillac, the defendant herein, take his hat off and drop it to the floor of the car. Both officers then got out of their vehicle and showed their identifications. The defendant got out of his car as the policemen approached and stood next to the door of his car, which was wide open ("almost at a 90-degree angle"). Patrolman Bartone asked the defendant for his license and his registration. Meanwhile, Lucien walked behind the defendant and looked down at the floor area of the car, where he observed a .38 calibre revolver next to the hat which defendant had dropped. Lucien "retrieved" the revolver and the defendant was placed under arrest. Patrolman Lucien conceded that he had observed nothing improper about the Cadillac which would have warranted a safety check. He acknowledged also that stopping cars for safety checks was not a part of his duties, and that he was not assigned to "traffic duty". He did say that he thought the car was "possibly" stolen, but conceded that there was no communication that the car was suspected of being stolen, and also admitted that he had made no effort over the radio to have the license plate checked. Martrella Flanagan, the defendant, testified in his own behalf. Flanagan was a conductor for the Long Island Railroad and had worked there for three years. On March 9, 1972 he had worked from 3:56 to 11:42 P.M. and had terminated his duties at the Jamaica Station. From there he drove to the vicinity of New York Boulevard and South Road to meet a friend who had told him that he would be in one of two bars in that area. Flanagan said he stopped outside a bar at 159th Street and South Road, went inside, and departed because his friend was not there. He then drove to a bar on New York Boulevard, two or three blocks from the first one. This time he stayed in his car because he could see inside the bar. His friend was not there and he turned right at the next block to go to his home. Flanagan denied stopping twice outside the second bar. In any event, shortly after turning from New York Boulevard, he was "headed off" by a taxicab. One of the occupants of the cab got out and displayed a badge. Flanagan was asked for his license and registration, which he handed to the officer while he was still seated in the car. The officer, Bartone, looked at the documents and then told Flanagan "to get out, he wanted to search the car." Bartone searched the glove compartment, under the seat, and the back of the car, but did not find anything. Lucien then produced a flashlight, searched the defendant, and searched the car a second time. Lucien took the flashlight, searched under the car seat, and "said he found the gun." The defendant denied ever having seen that gun before. He also denied wearing a hat. Defendant's motion to suppress was denied with Criminal Term finding that (1) the initial stop of defendant's

vehicle was justified because a "police officer, of course, under settled law may stop and inquire as to ownership of the vehicle" and (2) "the evidence sought to be suppressed was in open view" and, accordingly, there had been no illegal search. Upon denial of the motion, defendant pleaded guilty to the crime of attempted possession of a weapon. The sole issue is whether the initial "stop" of defendant's vehicle was justified. We would conclude that it was not (see *People v Ingle,* 36 NY2d 413; *People v Holmes,* 52 AD2d 629; cf. *People v Denti,* 44 AD2d 44). There is no merit to the arguments advanced by the People. "Heading" a car off with an unmarked police vehicle is no minimal intrusion of the defendant's rights (cf. *Terry v Ohio,* 392 US 1). The fact that defendant was observed in an area noted for its drug, stolen car and stolen property arrests does not afford justification for the actions taken. Defendant's actions were innocent and could not possibly suggest involvement with drugs, stolen cars, or other stolen property. Furthermore, the fact that defendant committed two very minor traffic offenses (see Vehicle and Traffic Law, § 1202, subd [a], par 1, cl a) does not justify police conduct of the very aggressive nature taken in this case. It is clear that the police officers were assigned to the anticrime unit and were *not* assigned to traffic duty. There is absolutely no hint in the record that the policemen stopped Flanagan to ticket him for double-parking. Obviously, therefore, the use of the parking violations as a justification for the action taken amounts to a mere pretext and we elect to treat it as such. Cohalan, Acting P. J., Margett, Suozzi and Mollen, JJ., concur.