THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
MIGUEL MESTEY, Appellant.

First Department, March 7, 1978

## APPEARANCES OF COUNSEL

*Jeremy D. Morley* of counsel *(Corynne A. Lebetkin* with him on the brief; *Halperin Shivitz Scholer Schneider & Eisenberg,* attorneys), for appellant.

*Steven J. Greenblatt* of counsel *(Alan D. Marrus* with him on the brief; *Mario Merola, District Attorney),* for respondent.

## OPINION OF THE COURT

MURPHY, P. J.

At the suppression hearing, police officers Denton and Schlereth were the only witnesses who testified about the circumstances surrounding defendant's arrest for criminal possession of a weapon in the third degree (Penal Law, § 265.02). For purposes of this appeal, the officers' testimony will be fully credited and will be viewed most favorably to the prosecution.

Officers Denton and Schlereth, together with Sergeant Moscato, were dressed in civilian clothes and were driving an unmarked police vehicle on the night of October 10, 1974. At about 11:00 P.M., the officers observed a nine-passenger gypsy cab parked outside a social club, known as a center for drug and gun traffic. The defendant, his wife and his two children entered the rear compartment of the gypsy cab. The front seat became occupied by a driver and a passenger named Jesus Nectar.

After following for several blocks, the police vehicle drew alongside the cab when it stopped for a red light. At that juncture, the officers identified themselves and directed the driver of the cab to pull to the curb. Admittedly, the officers were making a "spot check" or, as is more commonly known, a "routine traffic check" to determine the validity of the driver's license and registration. Although Officer Denton gave somewhat conflicting testimony as to the chronology of the events, it will be assumed that the "check" was prompted by the fact that he previously observed Nectar make a downward motion with an empty hand. For purposes of this appeal, it will also be assumed that Officer Denton had an unobstructed view of Nectar's movements even though the driver of the cab

apparently interfered with the officer's direct line of vision toward Nectar.

As the cab was slowing to a stop, Nectar alighted by way of the front passenger door. While Officer Schlereth checked the driver's license and registration, Officer Denton, with his gun drawn, put his hand through the window on the front passenger side of the cab. Denton saw the handle of a gun on the floor of the cab. He immediately retrieved it and placed Nectar under arrest.

The police then ordered the defendant, his family and the driver from the cab. Defendant's wife immediately became hysterical and a chaotic scene followed. In the midst of this commotion, Officer Schlereth noticed a gun fall to the ground behind the defendant. The latter was arrested and charged with criminal possession of this second gun.

Law enforcement officials must effect "routine traffic checks" in compliance with the principles set forth in *People v Ingle* (36 NY2d 413). In *Ingle,* the Court of Appeals emphasized that (at pp 414-415): "A single automobile traveling on a public highway may be stopped for a 'routine traffic check' when a police officer reasonably suspects a violation of the Vehicle and Traffic Law. Absent reasonable suspicion of a vehicle violation, a 'routine traffic check' to determine whether or not a vehicle is being operated in compliance with the Vehicle and Traffic Law is permissible only when conducted according to nonarbitrary, nondiscriminatory, uniform procedures for detecting violations. It should be emphasized that, in the context of a motor vehicle inspection 'stop', the degree of suspicion required to justify the stop is minimal. Nothing like probable cause as that term is used in the criminal law is required". With the foregoing guidelines in mind, the record will be examined to determine whether the "routine traffic check" in this proceeding was lawful.

■ Officer Denton testified that, prior to stopping the cab, he saw Nectar make a sudden downward motion with his hand. As was stressed above, Denton did not see a gun or other object in Nectar's hand. A quick hand motion by an occupant of a vehicle, absent other circumstances suggesting criminal activity, is not suspicious in itself. *(People v Martinez,* 37 NY2d 662, 664, 668.) Hence, Officers Denton and Schlereth had no valid reason to stop the cab merely because Nectar had lowered his hand quite suddenly.

Likewise, during the short period of surveillance, the officers

did not observe either the vehicle or its occupants violate any law. Their activity, prior to the stop, was not suspicious, but rather, it was quite innocent. *(People v Flanagan,* 56 AD2d 658; *People v Murray,* 48 AD2d 907.)* Therefore, the "check" must be predicated upon another basis if it is to be upheld as lawful.

The officers did not see the occupants of the cab exit the social club before entering the cab. They testified that the occupants were in the vicinity of the club prior to their entrance into the cab. The fact that the defendant and the other occupants were seen near a social club noted for its gun and drug traffic is no justification for stopping the cab. *(People v Flanagan, supra.)* So, too, the occupants' behavior outside the club did not in any way constitute "unusual street activity" that would sanction a stop. *(People v Martin,* 56 AD2d 876.)

By approaching the cab with his gun drawn, Officer Denton effectively seized the cab and its occupants. Thus, an unlawful stop had been made even before the police attempted to prosecute their "routine traffic check" *(People v Allende,* 39 NY2d 474). In any event, the "check" was apparently based on the arbitrary "hunch" of the officers that the occupants were engaging in some imperceptible criminal conduct rather than upon some founded suspicion with a basis in this record *(People v Allende, supra,* at p 477). For the foregoing reasons, the judgment of the Supreme Court, Bronx County (CHANA-NAU, J., at sentence; SILBERMANN, J., at suppression hearing), rendered August 19, 1976, should be reversed, on the law and on the facts, the motion to suppress should be granted, and the indictment should be dismissed.

SILVERMAN, EVANS, LANE and SANDLER, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered on August 19, 1976, unanimously reversed, on the law and on the facts, the motion to suppress granted and the indictment dismissed.