(November 14, 1978)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JERRY SKINNER, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY BACON, Appellant.—Judgments of conviction after pleas of guilty, rendered July 20, 1977 and July 28, 1977, respectively, Supreme Court, New York County, affirmed. The yardstick by which the propriety of a detentive stop by police is to be measured is clearly set forth as follows: "The minimum requirement for a lawful detentive stop is a founded suspicion that criminal activity is afoot *(People v Cantor,* 36 NY2d 106, 114). To justify the stop, the police must indicate specific and articulable facts which, along with any logical deduction, reasonably prompt such intrusion *(People v Cantor, supra,* p 113). The action taken by the police must also be reasonably related in scope to the circumstances which rendered its initiation permissible. *(People v De Bour,* 40 NY2d 210, 215)." *(People v Hill,* 65 AD2d 706.) For the purpose of ascertainment of whether there was compliance with this criterion, the facts, as set forth in the dissent may be accepted. In our view, the standard was met. Concur—Lane, Markewich, Lynch and Sullivan, JJ.; Murphy, P. J., dissents in a memorandum as follows: At about 1:00 P.M. on October 13, 1976, Detective Brereton and Officer Adams were in uniform and on patrol in a marked vehicle. As they turned east from Broadway into 82nd Street, they saw defendant Bacon throw a blue bag and a pillowcase into a yellow cab that was double-parked in front of 208 West 82nd Street. The officers testified that this was a high crime area. In the past, many burglars had made their escape by cab. Adams testified that Bacon was wearing a "dirty" coat and "didn't look like the sort of a fellow that would be taking a cab." Brereton observed defendant Skinner exiting from 208 West 82nd Street with a television set in hand. When Skinner saw the police vehicle, he hesitated for a moment and then proceeded down the steps to the sidewalk. Brereton took Skinner by an arm and directed him to stand in an area bounded by two parked cars and the yellow cab. Adams had already removed Bacon to that same area. At the suppression hearing, Brereton admitted that Skinner was not free to leave at that time. Presumably, Bacon's freedom of movement had been similarly constricted. The officers observed that both defendants were nervous and sweating; Bacon's left hand was bleeding. In answer to the officers' questions, Skinner was unable to identify the "make" of the television set. He also responded that he had not exited No. 208 but the building immediately adjacent to it. Brereton knew this last statement to be false since he had seen Skinner exit No. 208. Bacon, upon being asked for identification, produced a wallet belonging to a Mr. Gusweiler. Thereupon, the defendants were arrested. For the sake of brevity, let it merely be noted that Bacon subsequently made several incriminating statements concerning the defendants' involvement in this burglary. The minimum requirement for a lawful detentive stop is a founded suspicion that criminal activity is afoot. *(People v Cantor,* 36 NY2d 106, 112; CPL 140.50.) Neither defendant acted suspiciously before being stopped by the police. Bacon was about to enter the yellow cab. This innocent activity occurs countless times on the streets of New York every day. *(People v Mestey,* 61 AD2d 447.)* Surely, the police did

not have a valid reason to suspect that Skinner might have committed a crime from the fact that he momentarily paused before descending the steps. The right of the police to stop and question an individual will become unbridled should they be allowed to do so whenever a person stops for a second under otherwise innocent circumstances. Likewise, the sacks and television set carried by the defendants in the early afternoon are hardly items of contraband that would justify further inquiry on the part of the police. *(People v Moore,* 62 AD2d 155; cf. *People v Davis,* 36 NY2d 280; cf. *People v Anonymous,* 48 Misc 2d 713.) In any event, even if it were assumed that the police had reasonable suspicion to believe the defendants were involved in a crime, such suspicion only entitled the officers to ask appropriate questions (CPL 140.50, subd 1). The testimony adduced at the suppression hearing indicates that both defendants were unlawfully seized before the police ever began to question them. While the observation and interrogation of the defendants eventually gave the police probable cause to believe a burglary had occurred, the personalty seized must be suppressed because the initial stop was unlawful. *(People v Mestey, supra,* p 451; *People v Allende,* 39 NY2d 474, 477; *People v Cantor,* 36 NY2d 106, *supra.)* Accordingly, the judgments of conviction should be reversed, the motion to suppress should be granted, and the indictment should be dismissed. The cases are remitted to the Supreme Court, New York County, for further proceedings pursuant to CPL 460.50 (subd 5).