■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAIRO PEREZ, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Linakis, J.), rendered June 11, 1982, convicting him of criminal possession of a weapon in the third degree, after a nonjury trial, and imposing sentence. The appeal brings up for review the denial of the defendant's motion to suppress physical and testimonial evidence (Lerner, J.).

Appeal held in abeyance and matter remitted to the Supreme Court, Queens County, for a new hearing and determination on the defendant's suppression motion, in accordance herewith, before a Justice other than the one who initially determined his motion to suppress or the one who presided at the trial.

Defendant was indicted for criminal possession of a weapon in the third degree as the result of an incident which occurred on the premises of the Four Towns Auto Body Shop in Queens County on December 30, 1981, in which a gun was recovered from the confines of a trailer located thereon. In the ordinary course of events, a motion to suppress the gun and certain allegedly incriminating statements was made by the defendant, and on April 6, 1982 the matter came on for a combined *Mapp* and *Huntley* hearing.

At the hearing, the People produced but a single witness, Detective William J. Frawley, who testified, *inter alia,* that on the evening in question, he and his partner, Detective Robert O'Sullivan, were engaged in narcotics surveillance when a car that they had been following led them to the Four Towns Auto Body Shop in Queens. At this point, two individuals exited the car and entered a small work shack or trailer which was located on the premises. Notably, one of these two individuals was carrying a brown paper bag.

As the officers passed by the trailer, they noted that three other individuals were inside it, carrying on a conversation. One of these individuals eventually got up and pulled down a window shade, whereupon the officers decided to approach the trailer. As

they did so, one of the five individuals inside opened the door, at which point Frawley and his partner identified themselves as police officers and stated that they wanted to search the area for stolen government vehicles. The officers then stepped inside the trailer, where the man who had come to the door told them that they could search the adjacent lot and building.

Suddenly, while the foregoing conversation was still going on, the lights in the trailer went out, and Frawley heard a "shuffling back and forth" and a metal object hit the floor. At this juncture, the detective directed everyone not to move. Approximately two minutes later, when the lights came back on, the other members of Frawley's surveillance team entered the trailer, and it was at this point that the detective observed a partially open brown paper bag with a gun sitting on top of it in a corner of the trailer. Money was clearly visible inside the bag. When no one responded to Frawley's inquiry regarding ownership of the gun, he conferred with his superior (Sergeant Calavito), and it was thereafter determined that they "would take everybody in for investigation". At this point, the defendant, who was seated on a table, turned around and stated that the gun and the money were his. Detective Frawley then apprised the defendant of his rights, after which the defendant allegedly made a further incriminating statement. No witnesses were presented on behalf of the defense.

On the basis of this testimony, and without delineating any specific findings of fact, the motion court (Lerner, J.) denied the defendant's motion, stating: "THE COURT: I find that the officer acted in an appropriate manner. That the warnings were properly given. That the first admission was spontaneous. That the latter admission was given was [sic] after the *Miranda* warnings, and under the circumstances, and furthermore, that the officer acted in [a] lawful manner throughout the entire process, from beginning to the end". Defendant was subsequently convicted of criminal possession of a weapon in the third degree and sentenced to six months' imprisonment. This appeal followed.

On appeal, defendant maintains, *inter alia,* that his suppression motion was not properly decided; that the People's proof at trial was not legally sufficient to support the resulting conviction; and that the sentence, as imposed, was excessive. Although we cannot agree with the defendant's latter two contentions, in our view a further hearing is required on the defendant's suppression motion in light of the additional evidence which was adduced at trial bearing upon the subject. Accordingly, the matter is remitted for a new hearing and determination on this issue, and appeal will be held in abeyance during the interim.

Assuming, without deciding, that the testimony of Detective Frawley at the combined *Mapp* and *Huntley* hearing was legally sufficient to support the resulting denial of the defendant's motion, it appears in this case that further material evidence regarding the propriety of the police conduct was adduced for the first time during trial when Detective O'Sullivan testified at one point that after the lights came back on in the trailer and the gun had been discovered, the lack of response to Detective Frawley's question regarding ownership of the weapon not only resulted in the announced decision that everybody was going to be taken in for investigation, but that they were handcuffed as well. Apparently, although it is not certain, it was at this point that the defendant first admitted ownership of the gun.

While it is difficult to conclude with any degree of certainty on the present state of the record that at a hearing specifically directed to the issue this precise chronology would develop, it is not at all difficult to conclude that were such facts to be sufficiently established, it might support the further conclusion that the defendant's statements must be suppressed as the product of an illegal arrest (see *Dunaway v New York,* 442 US 200; *Wong Sun v United States,* 371 US 471). Thus, this was not a situation in which possession of the weapon could validly be imputed to all of the occupants of the trailer (cf. Penal Law, § 265.15), nor is there any indication of any activity on the part of this defendant which would tend to connect him with the crime. As the Court of Appeals noted in *People v Carrasquillo* (54 NY2d 248, 254), in order to constitute probable cause for a warrantless arrest, "it must appear to be at least more probable than not * * * that the [person] arrested is [the] perpetrator [of a crime], for conduct equally compatible with guilt or innocence will not suffice". Moreover, it is axiomatic that anyone who is otherwise acting lawfully may not be arrested merely because he is found in the company of others who are engaged in criminal activity (see *People v Martin,* 32 NY2d 123; *People v Batista,* 68 AD2d 515, affd 51 NY2d 996).

With such potentially damaging testimony coming from the mouth of a People's witness for the first time during trial, it is our belief that Criminal Term erred in denying the defendant's motion at the close of trial to reopen the suppression hearing for the purpose of inquiring further into the circumstances surrounding his detention on the premises of the Four Towns Auto Body Shop on December 30, 1981 and the ensuing statements he made (see CPL 710.40, subd 4). While the motion probably should have been made sooner, the potential for prejudice was minimized in this case by the fact that this was a nonjury trial.

Since the trial has already been completed, however, and since the defendant has been found guilty, it would appear most appropriate at this stage of the proceedings for the matter to be remitted for a hearing *de novo* before a Judge who has not as yet heard any testimony in the case.

The appeal will be held in abeyance during the interim. Lazer, J. P., Gibbons, Weinstein and Niehoff, JJ., concur.