THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR CHAPMAN, Appellant.

Second Department, October 22, 1984

**APPEARANCES OF COUNSEL**

*Louis A. Tirelli* (*Maureen McNamara* of counsel), for appellant.

*Kenneth Gribetz, District Attorney* (*Deborah L. Wolikow* of counsel), for respondent.

**OPINION OF THE COURT**

MOLLEN, P. J.

The issue presented on this appeal is whether under the circumstances at bar the defendant was seized in violation of his rights under the State and Federal Constitutions (NY Const, art I, § 12; US Const, 4th, 14th Amdts), thereby requiring suppression, as the fruit of the poisonous tree, of a pillowcase and its contents. The County Court concluded

that the defendant was not unlawfully seized and denied suppression. There should be an affirmance.

The facts, as developed at the suppression hearing, are for the most part undisputed. On the night of February 21, 1981, the Stony Point Police Department received a telephone call from a Mrs. Fowler who reported that an unknown man was trespassing on the grounds of her home on Filor's Lane. She described the trespasser as a tall Puerto Rican man with dark hair and wearing a gray shirt with the words "New York" written on it.

The Fowlers' home on Filor's Lane was located in an area which had been beset by a rash of burglaries so intense that the local police department had formed a burglary task force to combat it. As a result, Mrs. Fowler's complaint was relayed for investigation to Officer David Schassler who, as a member of the task force, knew that the perpetrators of neighborhood burglaries often used pillowcases to carry away stolen property.

When Officer Schassler arrived at the Fowler home, he was told that an unknown Puerto Rican man had been seen at the front door wearing a white T-shirt with the words "New York" written on it. The officer circled the house and determined that it was secure. He then reentered his vehicle and began driving off the property and onto Filor's Lane.

As he pulled out of the Fowlers' driveway, he noticed two men walking on the street. One, whom the officer identified in court as the defendant, was wearing a white T-shirt with the words "New York" written on it. Both men were carrying pillowcases.

The officer drove up to the two men and got out of his car. At the first sight of the officer, the defendant's companion dropped his pillowcase and ran. Although the defendant did not follow, he began stepping "back and forth". The officer drew his weapon and ordered the two men to halt. The defendant's companion did not obey and continued his flight. The officer then handcuffed the defendant, told him he was under arrest, and placed him in the patrol car.

A subsequent search revealed that the pillowcase which the defendant had been carrying contained a brown box,

documents and jewelry, all stolen in the course of a burglary committed that same night at another home on Filor's Lane. The defendant was ultimately convicted of criminal possession of the stolen property in the second degree. On this appeal, he contends that the stolen property discovered in his pillowcase should have been suppressed. We disagree.

As the Supreme Court has repeatedly observed: "Probable cause exists where 'the facts and circumstances within * * * [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves *to warrant a man of reasonable caution in the belief that' an offense has been or is being committed"* (*Brinegar v United States,* 338 US 160, 175-176 [emphasis supplied]; see *Henry v United States,* 361 US 98, 102; *Carroll v United States,* 267 US 132, 162; see, also, *People v Oden,* 36 NY2d 382, 384).

And, *"[i]n dealing with probable cause * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act"* (*Brinegar v United States, supra,* p 175; emphasis supplied). Moreover, in assessing the reasonableness of police conduct, a court is obliged to consider not merely the information the officer initially has, but the information he gathers as events unfold (see, e.g., *People v Finlayson,* 76 AD2d 670, 675, application for lv to app den 51 NY2d 1011, cert den 450 US 931). Applying these principles to the case at bar, we conclude that the defendant's arrest was entirely proper.

Officer Schassler knew that an Hispanic-looking man, wearing a distinctive shirt, had been seen *trespassing at night* at a house located in an area in which burglaries were rampant. A short time after the trespass, he encountered two men walking nearby. One precisely matched the description of the reported trespasser. Both men were carrying pillowcases, which Officer Schassler knew were often utilized to carry away the fruits of a crime. And, significantly, at the first appearance of the officer and before a word had been spoken, one of the men abandoned

his pillowcase and fled, disregarding the officer's order to halt.

In our view, it is entirely unrealistic to suggest that all of these factors, taken together, would be insufficient to warrant a prudent man in believing that an offense had been or was being committed.

*People v Howard* (50 NY2d 583, cert den 449 US 1023), relied on by the defendant, is not to the contrary and, indeed, supports affirmance in this case. In *Howard,* the Court of Appeals held only that, *in the absence of indications of criminal activity,* a person's flight from police, standing alone, is insufficient to establish probable cause. The court reaffirmed, however, that where there are indications of criminal activity, flight from police would be "an important factor in determining probable cause" (*People v Howard, supra,* p 592).

Similarly, *People v Carrasquillo* (54 NY2d 248) provides no basis for suppression, notwithstanding the dissenter's contentions to the contrary. Indeed, the following observations of then-Judge Fuchsberg, writing for the majority, underscore what are, in our view, the crucial factual differences between *Carrasquillo* (*supra,* p 254) and the case at bar: "As the transcript tells us, except for one thing, *this was a most uneventful encounter.* The defendant did not attempt to flee; rather, he was most co-operative and most responsive. His story on the whole was quite straightforward and was told without prodding" (emphasis supplied).

The "single suspicious note", viz., Carrasquillo's misdescription of a radio found in his possession was of no significance in the context of that case since "the singular imperfection was not without reasonable explanation" (*People v Carrasquillo, supra,* pp 254, 255).

In the instant case, criminal activity was plainly indicated. The defendant and his companion were walking in a neighborhood beset by burglaries. It was nighttime. Both men were carrying pillowcases — the type of container used by burglars in the area to carry away stolen property. And one of the men, later identified as the defendant, matched the distinctive description of a man who had been reported trespassing in the area earlier that same night. In

view of these indicia of criminality, the flight of the defendant's companion at the first sign of the police is "an important factor in determining probable cause" (*People v Howard, supra,* p 592).

In sum, we conclude that the totality of the information known to Officer Schassler, together with the reasonable inferences to be drawn therefrom, would clearly warrant a prudent man to believe that an offense had been or was being committed. That being so, we find that there was probable cause for the defendant's arrest and that, accordingly, that branch of his motion which sought to suppress physical evidence was properly denied.

Titone, J. (dissenting). I have no quarrel with the majority's factual recitation or the general propositions of law which it cites. But looking beyond such generalized propositions to the controlling holdings, I am compelled to conclude that the largely "undisputed" facts fall far short of the quantum necessary to establish probable cause for arrest at the time that the pillowcase was searched. Therefore, I must dissent.

"In passing on whether there was probable cause for an arrest, we consistently have made it plain that the basis for such a belief must not only be reasonable, but it must appear to be at least more probable than not that a crime has taken place and that the one arrested is its perpetrator, for conduct equally compatible with guilt or innocence will not suffice" (*People v Carrasquillo,* 54 NY2d 248, 254). Although an incidence of high crime in a neighborhood has some relevance in the probable cause equation, living in or visiting such a neighborhood does not operate as a forfeiture of the constitutional right to be free from unreasonable searches and seizures (NY Const, art I, § 12; US Const, 4th Amdt), and, absent some action which is not susceptible of an innocent interpretation, does not elevate mere suspicion to the level of probable cause (*People v Oden,* 36 NY2d 382; *People v Davis,* 36 NY2d 280, cert den 423 US 876; *People v Fripp,* 85 AD2d 547, affd 58 NY2d 907).

It is obvious that neither Officer Schassler nor his fellow officers had any valid predicate on which to base a conclusion that the defendant had committed, was committing, or was about to commit, a crime, the *sine qua non* of probable

cause (*People v Carrasquillo,* 54 NY2d 248, *supra; People v Oden,* 36 NY2d 382, *supra*).

As in *People v Carrasquillo* (54 NY2d 248, *supra*), defendant did not attempt to flee. That his companion did so is totally irrelevant because the defendant himself was engaged in no overt criminal activity (*People v Martin,* 32 NY2d 123; *People v Perez,* 104 AD2d 454; *People v Batista,* 68 AD2d 515, affd 51 NY2d 996; *People v Payne,* 50 AD2d 840). The companion, in any event, was free to do so under the circumstances (*People v Howard,* 50 NY2d 583, cert den 449 US 1023). More important, notwithstanding the absence of any objective fact or permissible factual inference, and without so much as the briefest kind of common-law inquiry, the officers precipitously placed defendant under arrest and conducted a search of his personal effects (*People v Carrasquillo,* 54 NY2d 248, 252, *supra; People v Howard, supra,* p 586; *People v De Bour,* 40 NY2d 210, 219; *People v Brown,* 32 NY2d 172).

The majority's error, I think, is in melding the concepts of probable cause to arrest and the reasonable suspicion standard governing a stop and frisk. I would agree that the minimum requirements for a lawful detentive stop were met (CPL 140.50; *People v Skinner,* 65 AD2d 704, affd 48 NY2d 889; but cf. *People v Carney,* 58 NY2d 51) and that a protective frisk could have been undertaken absent probable cause to arrest (*People v Tratch,* 104 AD2d 503). But our concern is not with a protective frisk, and, without probable cause to arrest, these factors cannot be utilized to sustain the search (*People v Donello,* 103 AD2d 781).

Simply put, the "facts" pointed to by the majority have been consistently held to warrant no more than inquiry and investigation; they do not reach the higher level of objectivity required for probable cause to arrest (*People v Carrasquillo,* 54 NY2d 248, *supra; People v Howard,* 50 NY2d 583, *supra; People v Brown,* 32 NY2d 172, *supra; People v Martin,* 32 NY2d 123, *supra; People v Donello, supra;* cf. *People v Moore,* 47 NY2d 911; *People v De Bour,* 40 NY2d 210, *supra*). Accordingly, that branch of the motion which sought suppression of physical evidence should have been granted (*People v Carrasquillo, supra; People v Donello, supra*).

WEINSTEIN and RUBIN, JJ., concur with MOLLEN, P. J.; TITONE, J., dissents and votes to reverse the judgment appealed from, grant that branch of defendant's pretrial motion which sought suppression of physical evidence, and order a new trial, with an opinion.

Judgment of the County Court, Rockland County, rendered December 7, 1981, affirmed.

The case is remitted to the County Court, Rockland County, for further proceedings pursuant to CPL 460.50 (subd 5).