■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PEDRO GUZMAN, Appellant.—Judgment, Supreme Court, New York County (Soloff, J., at plea and sentence; Gabel and Denzer, JJ., at suppression hearings), rendered December 17, 1981 which convicted defendant upon his plea of guilty to attempted criminal possession of a weapon in the third degree and sentenced him to a term of 1½ to 3 years' imprisonment, unanimously reversed, on the law, the motion to suppress granted, the plea vacated, and the indictment dismissed.

Defendant Pedro Guzman was indicted, charged with one count of criminal possession of a weapon in the third degree. Defendant moved to suppress the gun and his post arrest statements. The People's case at the *Mapp* phase of the

suppression hearing, held before Justice Hortense Gabel, centered on one witness, Officer Frank Lorello, who testified as follows: at 4:15 P.M., on January 25, 1981, he was on duty, in uniform and accompanied by his sergeant, driving a marked police motor patrol car southward on Broadway between West 163rd Street and West 164th Street. He observed defendant driving a brown Oldsmobile westbound on 163rd Street at a high rate of speed. The car skidded and fishtailed as it turned left and continued to speed south on Broadway, weaving from lane to lane. Lorello turned on his overhead flashing lights and pursued the defendant's car as it turned right on to Fort Washington Avenue and then right on to 160th Street. Lorello sounded his siren and pulled in front of defendant's car when it stopped for a red light at 160th Street and Broadway. Lorello then stepped out of the police vehicle and while approaching defendant's car from the passenger side, observed defendant in a semi-slouched position pumping his arm downward numerous times in what appeared to be an effort to push something down into the crevice between the cushions of the front seat of defendant's car. He crossed in front of the vehicle and asked defendant for some identification, which he then handed to the sergeant. Lorello then directed defendant to step out of and away from the car. Lorello testified that he leaned into the car through the open door, over the front passenger area, and saw the back strap (the metal portion of the butt between the two wooden handles) and the hammer of a revolver. He pulled the gun from between the seat cushions and placed it in his pocket. Defendant was then placed in the back of the patrol car. Lorello explained that in order to create the impression there was only a problem with his license, defendant was neither searched, handcuffed, nor given *Miranda* warnings. Later, at the 30th Precinct station house, defendant was arrested, and given *Miranda* warnings.

In a decision rendered April 28, 1981, the hearing court (Gabel, J.) denied the motion to suppress the gun seized from the car and granted the *Huntley* motion to suppress defendant's postarrest statements. Only the determination to deny the motion to suppress the gun is at issue on this appeal. The court found Officer Lorello's testimony "entirely believable" and upheld the search of the front passenger area of the car on the ground that the gun was in plain view. Subsequently, a motion for a second suppression hearing, based upon newly discovered evidence, was granted by Justice Soloff, and the hearing was held before Justice Denzer. Officer Lorello again testified to the aforementioned scenario. However, he admitted

that after observing defendant make the pumping motions in the car, he approached defendant by walking through the potential line of fire without drawing his gun, or saying anything to the defendant, and could not recollect telling the sergeant about the pumping motion. By decision dated October 30, 1981, Justice Denzer denied the motion, finding *inter alia,* that the new testimony of two eyewitnesses refuting the claimed discovery of a gun at the scene did not justify a rejection of the credibility and factual determinations underlying Justice Gabel's decision.

We reverse. In our view, under the facts as testified to by the arresting officer, and a reasonable view of the evidence, there was no predicate for the search of defendant's vehicle. First, the District Attorney here concedes, as he must, that Justice Gabel erred in invoking the plain view doctrine, without evaluating Officer Lorello's right to be in the position where he observed the gun. *(Coolidge v New Hampshire,* 403 US 443.) The plain view doctrine has no application where, as here, the police officer made his observation of contraband from within the vehicle.

The People contend, however, that the seizure is justifiable as a search incident to an arrest or a frisk incident to a lawful traffic infraction stop. "It is settled that, as a protective measure, an officer who lawfully stops a vehicle for a traffic offense may order the driver to step out of the car. (See *Pennsylvania v Mimms,* 434 US 106.)" *(People v David L.,* 81 AD2d 893, 894, *revd on other grounds* 56 NY2d 698.) However, in the absence of a prior indication of criminality or an articulable basis for fearing danger, an officer is not entitled to take the additional step of searching the interior of the car.

In a case closely akin to the present case, *People v Young* (81 AD2d 843), the Second Department granted a motion to suppress a gun and glassine envelopes taken from the interior of a car which police officers had stopped for making a right turn without signaling properly. The court held that there was no justification for searching a vehicle after the occupants had exited, particularly as there was no evidence the officers believed they were in physical danger. There the officers drew their guns and directed the occupants to freeze after observing the defendant and another occupant bend over as if putting something under the front seat.

Officer Lorello's testimony here that he feared defendant was armed and dangerous due to his furtive movements is incredible and does not justify the search. It is belied by the

fact that he did not communicate his observation to his sergeant, crossed in front of defendant's potential line of fire, and did not direct the defendant to freeze. Nor, did he arrest and handcuff defendant at the scene of the stop. In any event, scrutiny of Lorello's testimony reveals that such a belief would have been unreasonable under the circumstances. Indeed, it seems tailored to nullify constitutional objections. *(People v Quinones,* 61 AD2d 765, 766; *see also, People v Berrios,* 28 NY2d 361, 368.)

The cases cited by the People *(Michigan v Long,* 463 US 1032; *People v Pitt,* 110 AD2d 723, and *People v Evans,* 106 AD2d 527) are inapposite. In each of these cases, there was evidence that the officers had reasonable grounds for believing that they were in physical danger.

Seizure of the gun inside the car was not justified as the result of a search incident to an arrest because defendant was not arrested until a considerable time after the search. *(People v Evans,* 43 NY2d 160, 166; *cf. People v Belton,* 55 NY2d 49.) Additionally, the search was unwarranted in view of the lack of probable cause to believe defendant had committed a crime, as distinct from a traffic infraction when his vehicle was stopped. *(People v Marsh,* 20 NY2d 98, 101.) In view of the foregoing, we find it unnecessary to reach defendant's remaining contentions. Concur—Sullivan, J. P., Carro, Fein, Lynch and Rosenberger, JJ.