■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EVERETT MCCREADY, Appellant.—Judgment, Supreme Court, New York County (Blangiardo, J.), rendered February 7, 1985, which convicted defendant of criminal possession of a weapon in the third degree and sentenced him to a term of from 2½ to 5 years' imprisonment, reversed, on the law, the motion to suppress granted, and the indictment dismissed.

The defendant was seen sitting in a parked van on West 129th Street in Harlem at 5 o'clock in the morning of August 9, 1984 by police officers. A police officer, the only witness for the prosecution at the suppression hearing, testified that, while riding past the defendant's van in his police car, he noticed that the defendant "kept turning around to look out the window and to look at us as we passed him." The police car stopped at the corner and the officer observed the defendant by use of the rear-view mirror. The officer waited for the traffic light to change. At that time, the defendant turned on the headlights of the van and drove west on 129th Street. The officer noticed that the right front headlight of the van was not lit. The defendant drove for about a block and a half and stopped for a traffic light. He then turned right on to Lenox Avenue. At that time, the police officers signaled to him and he pulled the van over to the side of the road. The officer testified that as the defendant was pulling the van to the side of the road he noticed the defendant make "a motion of reaching under the seat, either to pick up something or put something down." The officer who had been driving the police car approached the driver's side of the van while the officer who testified approached the passenger side of the van. The officer at the driver's side asked the defendant to step out of the vehicle. The officer at the passenger side testified: "At that moment, I opened the passenger door and I proceeded to the seat to look under the seat." The pistol which was the subject

of the indictment was recovered from under the driver's seat. A summons was also issued to the defendant for "driving with his right headlight not operating."

The officer testified that he "felt that due to the nature of the crimes that we had had on that street at that location where the defendant was parked, I felt that he had a weapon." He also testified that the defendant's van had been stopped only because of the inoperable headlight. When asked his reason for searching the vehicle the officer responded: "My basis for the search was that I felt that I was in danger, my safety was in danger, and the safety of my partner, due to the furtive moves that he made when we attempted to pull him over. That is the sole basis for my search."

There was concededly a search of the van. The police officer entered it for the purpose of searching under the front seat. The defendant was at that point no longer in the van.

This court has held in *People v Mestey* (61 AD2d 447, 450 [1st Dept 1978]) that: "A quick hand motion by an occupant of a vehicle, absent other circumstances suggesting criminal activity, is not suspicious in itself [citation omitted]." This court has also held, on numerous occasions, that a high crime area does not convert otherwise innocuous behavior taking place within it into behavior warranting a search. *(People v Bond,* 116 AD2d 28 [1st Dept 1986]; *People v Cornelius,* 113 AD2d 666 [1st Dept 1986]; *People v Bronston,* 113 AD2d 627 [1st Dept 1986]; *People v Meachem,* 115 AD2d 370 [1st Dept 1985].)

The cases relied upon by the People are readily distinguishable. *People v Simmons* (83 AD2d 79 [1st Dept 1981]) dealt with a police officer shining his flashlight into an automobile through the window and thereby seeing a gun on the floor. *People v David L.* (56 NY2d 698 [1982]) was a situation in which a police officer opened the door of an automobile and saw a weapon in the waistband of the defendant. Neither of these cases involved an entry into, and search of, an automobile such as is present here.

Since the single downward motion of the defendant's hand as the van was being stopped, coupled with the "high crime location" in which the defendant was first seen, was insufficient to warrant the search of the van, the motion to suppress should have been granted. Concur—Fein, Milonas, Rosenberger and Wallach, JJ.

Sandler, J. P., dissents in a memorandum as follows: Whatever else may be thought about the event with which we are concerned, this was not a run-of-the-mill, everyday traffic stop.

Two uniformed police officers in a patrol car observed the defendant sitting in a parked car at 5 o'clock in the morning, on a street known to them as a center of drug-related activities, shootings and unlawful weapons possession. Understandably concluding that the defendant's presence in a parked vehicle at the unusual hour, at that location, indicated the possibility of a pending criminal activity, the officers stopped their car in front of the defendant's van, some distance down the street, to see what would happen. After five minutes, the defendant, who had exhibited signs of nervousness as the officers passed, started the van and turned on the headlights. Observing that one of the headlights was not working, the officers followed the defendant for a short distance and then directed him to pull over.

The officers pulled their car alongside the driver's side of the van so that they could keep the defendant in view at all times. They observed the defendant bend forward and reach under the driver's seat as though he were either putting something under the seat or taking something from under it. Concluding that the defendant may either have concealed a weapon under the seat or had armed himself with a weapon that had previously been under the seat, one officer directed the defendant to step out of the van and the other entered the van and recovered a .25 caliber pistol from underneath the seat. The gun had four rounds of ammunition, and one was in the chamber in a firing position.

Although a very different version of the encounter was presented by the defendant, the hearing court concluded that the police testimony was truthful and that the entry into the car and removal of the gun from under the seat were justified by the officers' reasonable concern for their safety. I agree.

Two questions are presented on this appeal with regard to the recovery of the gun.

The first is whether or not the evidence supports the hearing court's factual determination that the testimony of the officers was truthful. I see no basis in this record for disturbing that factual determination, and indeed the court's memorandum apparently agrees. No doubt it is possible that some of that which was testified to by the officer was untrue, and in particular that the officer may have contrived the story of the defendant's motion in an effort to justify police action that would otherwise have been improper. Such things have been known to happen. But it does not follow from the fact that testimony of this kind is sometimes untrue that such testi-

mony is always false, or that it was false in this case. The issue of credibility is in the first instance for the hearing court, and there is nothing about the testimony of the officer in this case so improbable as to justify our setting aside the hearing court's factual determination.

The second question, of course, is whether the officers reasonably suspected that the defendant had either placed a weapon under the seat of the car or had armed himself with a weapon when he made the described motion. Even if the driver of a vehicle had made such a movement in connection with a daytime routine traffic stop, I would have thought that a police officer might well have experienced a sense of fear. In this case, defendant's motion occurred at 5 o'clock in the morning, in a street known to the officers as a center of drug-related and weapons activity, and following observations by the officers that could have led them reasonably to suppose that the defendant's presence in a parked vehicle at that time, on that street, might be related to a criminal activity.

Under all the circumstances presented, it seems to me clear that the officers were justified in the fear for their safety that was testified to, and reasonable in the inference they drew as to the significance of the defendant's arm movement. In my opinion, the response of the police officers to that which they described would have been the response of most, if not all, experienced officers, and was entirely justified under CPL 140.50 (3).

In *Pennsylvania v Mimms* (434 US 106, 110), the United States Supreme Court made some observations in a related context that merit repeating in full: "We think it too plain for argument that the State's proffered justification—the safety of the officer—is both legitimate and weighty. 'Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.' *Terry* v. *Ohio, supra,* at 23. And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. 'According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. Bristow, Police Officer Shootings—A Tactical Evaluation, 54 J. Crim. L. C. & P. S. 93 (1963).' *Adams* v. *Williams,* 407 U. S. 143, 148 n. 3 (1972). We are aware that not all these assaults occur when issuing traffic summons *[sic],* but we have before expressly declined to accept the argument that traffic violations necessarily involve less danger to officers than other types of confrontations. *United States* v. *Robinson,* 414 U. S. 218, 234

(1973). Indeed, it appears 'that a significant percentage of murders of police officers occurs when the officers are making traffic stops.' *Id.,* at 234 n. 5."

As to the trial that followed, I believe that inappropriate emphasis was given in every part of the trial to the drug-prone character of the street on which the encounter occurred, and that if there had been timely objections, a reversal would have been justified. In the absence of any objections, I do not believe that what occurred requires us to reach the issue in the interest of justice, although I find that question closer than the issue raised by the hearing court's determination of the suppression issue.

Accordingly, the judgment of the Supreme Court, New York County (Frank J. Blangiardo, J., at motion to suppress physical evidence and at trial with a jury), rendered February 7, 1985, convicting defendant of criminal possession of a weapon in the third degree and sentencing him to an indeterminate term of imprisonment of 2½ to 5 years, should be affirmed.