THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD GILES, Appellant.

First Department, May 3, 1988

## APPEARANCES OF COUNSEL

*Mary C. Farrington* of counsel *(Mark Dwyer* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Richard Joselson* of counsel *(Philip L. Weinstein,* attorney), for appellant.

## OPINION OF THE COURT

KASSAL, J.

At approximately 11:15 P.M. on November 19, 1984, Police Officers Joseph Hamilton, Kenneth Donohue and Jeffrey Timmerman, members of the New York Police Department Taxi Robbery Squad, were in plain clothes and patrolling in an unmarked vehicle heading north on Bradhurst Avenue in upper Manhattan. At 148th Street, the police vehicle, driven by Officer Hamilton, passed a southbound taxicab driven by Juan Brea and containing defendant and two other black male passengers, Lamont Victor Townes and codefendant Wayne Johnson. Despite the absence of any traffic law violation or cab driver distress signal, such as the use of high beams *(see, People v Davis,* 130 AD2d 268) the police officers decided to make a U-turn and follow the taxicab.

As they followed from a distance of 2 to 3 car lengths, the passenger sitting in the left rear seat, identified at trial as the defendant, looked in the direction of their vehicle and then conversed with the other passengers. The officers next observed the middle passenger, Townes, raise his shoulders and appear to place his arms behind his back. Finally, the passenger seated in the far right of the passenger compartment, codefendant Johnson, leaned forward and momentarily disappeared from view. Based upon these observations, the police officers determined to stop the cab, and signaled the driver to pull over by placing a revolving red turret light on their dashboard. Before leaving the police vehicle, the officers further decided to remove the taxicab passengers without first making inquiry of them or the driver.

In accordance with their plan, the three officers approached and surrounded the stopped taxi, Timmerman with gun drawn. Standing at the left rear door, Hamilton directed the passengers to exit via the right rear door, which Donohue held opened. As defendant and the others began to move out, Hamilton observed the handle of a revolver protruding from between the bottom and back seat cushions, near where defendant and Townes had been sitting. When all three passengers were outside, Hamilton entered the taxi and seized a loaded .44 caliber Magnum revolver, a speed loader containing .44 caliber ammunition, and a magazine loaded with .9 milli-

meter bullets. On the right side of the back seat, Officer Donohue found a fully loaded .9 millimeter semiautomatic pistol under the passenger seat vacated by codefendant Johnson.

Defendant, Townes and Johnson were arrested and, upon search of their persons, one tinfoil of cocaine each was found on defendant and Townes and two tinfoils of the drug were found on Johnson. In addition, defendant possessed a .44 caliber bullet. All three were indicted for two counts of criminal possession of a weapon in the third degree and one count of criminal possession of a controlled substance in the seventh degree.

Prior to trial, defendant moved to suppress the physical evidence. The motion was denied without a hearing on or about March 22, 1985, on the ground that defendant lacked standing to challenge the stop and ensuing search of the taxicab.

■ As the People concede on appeal, the holding in *People v Millan* (69 NY2d 514) decided subsequent to the summary denial of defendant's suppression motion, establishes that a taxicab passenger has standing to contest the stop of the vehicle in which he rides. *(See also, People v Fore,* 131 AD2d 329; *People v Madera,* 125 AD2d 238.)* In addition, such passenger has standing to contest a search which yields contraband leading to possession charges based upon the statutory presumption set forth in Penal Law § 265.15 (3). *(People v Millan, supra,* at 516.)

■ Since defendant falls squarely within the *Millan* criteria, lack of standing does not bar his challenge to the police actions, and the merits of the suppression issue may be addressed. While it is our usual practice to remand cases in this post-*Millan* posture for a hearing *(see, e.g., People v Martin,* 135 AD2d 355; *People v Fore, supra),* a review of the transcript reveals that facts sufficient to resolve the suppression issue were developed at trial. These facts, derived from testimony given for the prosecution by the three police officers involved in the stop and search of the taxicab, so favor suppression that we exercise our fact-finding power in the interest of justice and judicial economy *(see,* CPL 470.15 [1], [6]; *People v Carter,* 63 NY2d 530, 536; *People v Kidd,* 76 AD2d 665, 667, *lv dismissed* 51 NY2d 882)* and conclude that defendant's motion must be granted and the indictment dismissed.

In taking this unusual step, we note that cases prohibiting

the Appellate Division from relying upon trial evidence to determine the propriety of a suppression court's ruling address themselves to circumstances in which the appellate court upholds a *denial* of defendant's motion on the basis of such evidence. *(See, e.g., People v James,* 67 NY2d 662, 664; *People v Wilkins,* 65 NY2d 172, 180; *People v Dodt,* 61 NY2d 408, 417; *People v Gonzalez,* 55 NY2d 720, 721-722, *cert denied* 456 US 1010.)* We face no such restriction here, where our ruling is to *grant* the suppression motion. Moreover, since our determination is based upon a review of the events leading to the stop and search as described by the three police officers, the prosecution was accorded a full opportunity to be heard on this issue and, indeed, has produced the very record upon which we base our ruling. *(See, People v Havelka,* 45 NY2d 636, 643; *People v Wilkins, supra,* at 180.)

█ Turning, then, to the merits of defendant's claim, we find that a reasonable view of the relevant evidence fails to provide justification for the stop of the taxicab. Prior to the stop, the police observed neither a violation of the traffic laws nor any signs of distress on the part of the cab driver. *(See, People v Castro,* 129 AD2d 406; *People v Davis, supra.)* Rather, the sole predicate for the full-blown gunpoint seizure was the officers' observations of certain physical motions on the part of the passengers. It has been held, however, that in the absence of circumstances suggesting criminal activity, otherwise innocuous behavior, such as looking in the direction of police officers, will not justify a stop *(People v Carrasquillo,* 54 NY2d 248), and that a stop may not be premised upon nothing more than hand motions made by occupants of vehicles. *(People v Mestey,* 61 AD2d 447, 450.)

Indeed, even where a vehicle is, or is about to be, lawfully stopped for a traffic infraction, motions susceptible to innocent interpretations, such as head turning and reaching under the seat, will not entitle the police to take the additional measure of searching the interior of the car once it is stopped, unless the movements are either accompanied by some indication of criminal activity or provide a reasonable basis for the police to fear danger. *(See, People v McCready,* 121 AD2d 897, *appeal dismissed* 68 NY2d 981; *People v Guzman,* 116 AD2d 528.)* No such circumstances are present here.

Accordingly, the appeal from the judgment, Supreme Court, New York County (Stanley Sklar, J.), rendered January 10, 1986, convicting defendant after a jury trial, of criminal possession of a weapon in the third degree (two counts) and

criminal possession of a controlled substance in the seventh degree, and sentencing him, as a predicate violent felon, to concurrent terms of from 3½ to 7 years' imprisonment and 1 year, respectively, should be reversed, on the law and in the exercise of discretion, and the indictment dismissed.

MURPHY, P. J., ROSS, CARRO and ELLERIN, JJ., concur.

Judgment, Supreme Court, New York County, rendered on January 10, 1986, unanimously reversed, on the law and in the exercise of discretion, and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.