■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE CONCEPCION, Appellant. [628 NYS2d 942] —Judgment, Supreme Court, Bronx County (John Fisch, J.), rendered May 25, 1993, convicting defendant, after a trial by jury, of criminal possession of a controlled substance in the fourth degree, and sentencing him to 6 to 12 years in prison, unanimously reversed, on the law, defendant's motion to suppress granted, and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30 day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

The evidence at the suppression hearing demonstrated that, on the night of October 30, 1992, three plainclothes officers in an unmarked police car stopped at a red light next to a livery cab, and, when they looked into the cab, defendant, the only passenger, began "fidgeting around", looked in the opposite direction, and raised one of his hands. One of the officers also testified to the existence of the "New York City Taxi Cab Check Program," a police department policy permitting police officers to stop taxicabs and check on drivers' safety, which was instituted in response to a rash of taxicab robberies and homicides. He also noted that his awareness was particularly heightened by the fact that a livery cab robbery had taken place that night in a nearby precinct. Based solely on these factors, the officer informed his partners that he thought there might be a robbery in progress in the livery cab, and the driver pulled up behind the cab and signalled to its driver to pull over. As the cab was approaching the curb, defendant threw two glassine envelopes from the rear window, which were later recovered.

Initially, we note that, as the prosecution concedes, defendant had standing to contest the stop by the police of the taxicab in which he was a passenger (*People v Millan*, 69 NY2d 514, 520; *People v Knight*, 138 AD2d 294, 296, *appeal dismissed* 73 NY2d 992; *People v Giles*, 137 AD2d 1, *revd on other grounds* 73 NY2d 666).

Moreover, upon our review of the evidence presented at the hearing, we find that the officer's testimony did not satisfy the prosecution's burden of establishing that the police had a reasonable suspicion of criminal activity sufficient to justify stopping the vehicle.

First, in light of the officer's testimony concerning police department policy, it is important to point out that there was no indication that the cab was stopped pursuant to a routine systematic procedure conducted according to rules or guidelines providing for nonarbitrarily selected vehicle stops (*cf., People v Scott*, 63 NY2d 518). In the absence of such evidence, the fact that the police department may have had a policy permitting the officers to exercise their own discretion in stopping taxicabs in the absence of reasonable suspicion of criminal activity is not relevant in determining whether the instant stop was proper.

While the fact that a certain geographical area or type of activity, such as riding in taxicabs, is particularly susceptible to criminal behavior is one factor to be considered in determining whether the police have reasonable suspicion of criminal activity, it is not, without more, sufficient to support such a finding. Clearly, the vast majority of taxicab patrons are not in the habit of committing robberies, and the mere act of using this particular mode of transportation is not by itself a suspicious activity. Nor in this case was there sufficient evidence specifically concerning the defendant's behavior to justify that suspicion. The facts which were articulated by the officer, i.e., that defendant was fidgeting and that he looked away and raised his hand, were simply too innocuous to support anything more than a hunch, and, even taking into account that livery cab robberies are not uncommon, were clearly not sufficient in this instance to establish a reasonable suspicion that a crime had been, was being, or was about to be committed.

Finally, since defendant's discard of the glassine envelopes containing cocaine was in direct response to the officers' illegal stop (*see, People v Holmes*, 181 AD2d 27, *affd* 81 NY2d 1056; *People v Grant*, 164 AD2d 170, *appeal dismissed* 77 NY2d 926), the evidence should have been suppressed. Concur—Ellerin, J. P., Wallach, Kupferman, Nardelli and Mazzarelli, JJ.