OPINION OF THE COURT
Sondea K. Paedes, J.
Decision after Hearing
The defendant herein is charged with violating Penal Law § 221.05 (unlawful possession of marijuana); Vehicle and Traffic Law § 1163 (d) (failure to signal lane change); and Vehicle and Traffic Law § 507 (2) (failure to exhibit license).
A Mapp/Huntley/Dunaway hearing was held, on consent of the People, on March 5, 2010.
Testimony
Nassau County Police Officer Michael O’Brien, of the Third Precinct, testified to the following:
On September 3, 2009 at approximately 4:30 p.m. he was traveling westbound on Jericho Turnpike in the Village of Mineóla, when he observed the driver of the car in front of him change lanes without signaling. He initiated his lights and the car pulled into a Dunkin’ Donuts parking lot. The officer approached the driver (the officer identified the defendant as the driver) and requested his license, registration and insurance documents. The defendant responded that he did not have his New York State driver’s license with him. The officer asked for the driver’s registration and insurance card. The defendant “opened the glove box and was digging through the glove box looking for a registration.” Police Officer O’Brien moved from the driver’s side to the passenger side of the vehicle. While he was observing the defendant looking for the registration, the defendant “opened the center console compartment” between the driver’s seat and the front passenger’s seat and the officer saw “a clear plastic bag containing a brown leafy substance known to me as marijuana . . . sitting on top of other various things.” Police Officer O’Brien asked the defendant “what is that?” and the defendant responded “yes or yeah ... I forgot I had that in there.” Police Officer O’Brien testified that the defendant made that statement at 4:29 p.m.
Police Officer O’Brien stated that he moved back to the driver’s side of the car, asked the defendant to exit the vehicle, and placed him under arrest for possession of marijuana.
*734 The defendant, Giancarlo Alvarado, testified as follows:
On September 3, 2009, at about 4:30 p.m., he was driving home traveling westbound on Jericho Turnpike. He stated that he “switched into the right lane, failing to signal,” and a police officer pulled him over into the Dunkin’ Donuts parking lot. The officer approached the car and asked him for his driver’s license and registration. He told him that he had lost his wallet so he did not have his driver’s license. He said that his registration and insurance information were in the visor and that he found the registration, which he gave to the officer, but not the insurance card. (The defendant stated that the police officer retrieved the insurance card from the visor at a later point.)
The officer then asked him to step out of the car and then “he asked me to — if I can do these tests that he asked me to do. It was a stand on one foot and a count to 30 or something like that.” The defendant could not remember any other tests. The officer then asked him to get back into the car.
When he returned to the car, the defendant resumed his search for the missing document and looked in the glove box underneath the dashboard. The police officer, who was now standing next to the front passenger side window, asked him “to empty out the glove box in the dashboard.” The defendant did so and placed all of the items on the front passenger seat.
The officer then asked the defendant to open the center console and told him “to take whatever I have there out.” The defendant stated that he took a number of items out of the console, everything that was in there, and “then marijuana was on the bottom, so that was the last thing I took out.” The defendant stated that the marijuana would not have been visible when the console was opened because “there was stuff on top of it.”
At the close of testimony the People argued that the defendant’s statement was a result of “pre-arrest questioning” and not subject to Miranda v Arizona (384 US 436 [1966]) and that the police officer had probable cause to stop the car because he witnessed a violation of the Vehicle and Traffic Law.
The People argued further that even if the court accepts the defendant’s statement that the marijuana was not in plain view the moment the defendant opened the console, “the marijuana was made visible by the defendant. The officer did not search the vehicle. The officer was in a lawful vantage point to have a full view of what was in that center console.”
*735 Defense counsel argued that after the police officer pulled the defendant over for a Vehicle and Traffic Law violation, which the defendant acknowledged, the officer asked him to exit the vehicle and perform standard field sobriety tests. Having determined that the defendant was not intoxicated, the officer directed the defendant to return to the vehicle. Counsel argued that at this point the officer had placed the defendant in custody. The officer then directed the defendant “while he was in his custody to open the glove box and empty its contents.” Counsel pointed out that the officer did not testify that there were any indicia at all that the defendant had been driving erratically, that he smelled of marijuana or that he did anything to give rise to the suspicion that there were drugs in the car. Counsel argued that the search was unlawful because the police officer had no basis to search the vehicle and he used the defendant as his “instrument” to conduct the search.
Findings of Fact and Conclusions of Law
It is well established that a police officer may stop a vehicle on a public highway when the officer has reason to believe there has been a violation of the Vehicle and Traffic Law (People v Ingle, 36 NY2d 413 [1975]). In addition, once having stopped the vehicle in response to a Vehicle and Traffic Law violation, the police may conduct a search of the automobile if the officer has “probable cause to believe the defendant had committed a crime, as distinct from a traffic infraction when his vehicle was stopped” (People v Guzman, 116 AD2d 528, 531 [1st Dept 1986] [emphasis added], citing People v Marsh, 20 NY2d 98 [1967]).
In the instant case the uncontroverted testimony establishes that the defendant committed a violation of Vehicle and Traffic Law § 1163 (d) when he changed lanes without signaling his intent to do so. The officer was clearly justified in stopping the vehicle and requesting that the driver produce his license, registration and insurance card. The defendant acknowledged that he made the improper lane change and that he did not have his driver’s license on the date of the incident. Therefore, the police officer had good cause to issue summonses for these Vehicle and Traffic Law violations.
The People argue that the discovery of the marijuana was not the result of an improper search because the marijuana was “made visible by the defendant” and therefore he exposed it to the “plain view” of the police officer who was therefore justified in questioning the defendant about it, seizing the marijuana, *736 and arresting the defendant for a violation of Penal Law § 221.05.
After considering the conflicting testimony of the officer and the defendant with respect to the events surrounding the arrest, the court finds the defendant’s testimony to be credible. In addition, the court finds that the officer’s testimony was “tailored to nullify constitutional objections” (see Guzman at 531).
The court credits the defendant’s testimony that he pulled over in response to the police officer’s directions, when he recognized that he had changed lanes without signaling. He continued to follow the officer’s directions when he attempted to locate his registration and insurance documents. The defendant’s description of the “test” the officer directed him to perform after he directed him to step out of the vehicle was entirely believable, despite the police officer’s denial that he directed defendant to step out of the vehicle and perform any standard field sobriety tests. The court credits the defendant’s statement that he returned to the vehicle at the officer’s direction, and, at his direction, proceeded to search and empty, first, the glove compartment in the dashboard, and then the console compartment.
The court finds that there was no basis for conducting a search of the defendant’s car. The officer did not articulate that he had reason to believe that the vehicle contained evidence of a crime or that he had reason to fear for his safety (People v Savona, 112 AD2d 328 [2d Dept 1985]). A search may not be “exploratory in nature but must be specific in its initiation and its scope” (People v Adams, 32 NY2d 451, 454 [1973]).
Inasmuch as the court finds that the police officer was not justified in conducting a search of the defendant’s vehicle, the court finds that the officer was not warranted in directing the defendant to empty the glove compartment and the console to search for anything. The court agrees that by directing the defendant to empty these compartments in the vehicle, the police officer was using the defendant as his instrument to conduct a search of the vehicle. In addition, based on the testimony that the court finds to be credible, the court finds that the marijuana in question was not in “plain view” but was only revealed after the officer directed the defendant to search and empty the console compartment, revealing the marijuana at the bottom of the other items stored therein.
Accordingly, the court finds that the marijuana seized in the course of the defendant’s arrest must be suppressed as it was *737 the result of an improper search. In addition the court finds that the statement made by the defendant must be suppressed because it was made in response to the officer’s question about the marijuana unearthed in the course of the improper search.